## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

SHELL OFFSHORE INC., a Delaware
corporation, and SHELL GULF OF
MEXICO INC., a Delaware corporation,

                              Plaintiffs,
          v.

GREENPEACE, INC., a California
corporation, and JOHN and JANE
DOES 1-20,

                              Defendants.          Case No. 3:12-cv-00042-SLG

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION
### (Within United States Territorial Waters and Ports)

Shell Oil Company[1] filed a combined Motion for Temporary Restraining Order and
Preliminary Injunction on February 27, 2012.[2]  After a hearing on February 29, 2012 at
which both Shell and Greenpeace, Inc., participated, this court entered a Temporary
Restraining Order on March 1, 2012 which has enjoined Greenpeace and those acting in
concert with it from engaging in certain illegal or tortious acts within U.S. territorial waters
and waters of the Exclusive Economic Zone of the United States against two vessels in
which the plaintiff has an interest.[3]  Specifically, the order applied to the two primary
vessels which Shell intends to use this summer for exploratory offshore oil drilling in the
Beaufort and Chukchi Seas off the northwestern coast of Alaska: the *Kulluk* and the *Noble*

---

[1]  Pursuant to the Second Amended Verified Complaint (Docket 86), the new plaintiffs in this action
are Shell Offshore Inc. and Shell Gulf of Mexico Inc. ("Shell").

[2]  Docket 6.

[3]  Docket 27.

*Discoverer*. The Temporary Restraining Order was initially effective until March 14, 2012. It was extended for an additional 14 days until March 28, 2012 when Greenpeace, Inc., which is also known as Greenpeace USA, sought additional time to file its opposition to the Motion for Preliminary Injunction.[4]

Greenpeace USA filed its opposition to the Motion for Preliminary Injunction on March 12, 2012.[5]  With that opposition, it submitted sworn declarations from Thomas Wetterer, Greenpeace USA's General Counsel;[6] Nathan Santry, Greenpeace USA's Director of Actions;[7] and Anthony Ford, a mariner who is currently employed as the ship handling Senior Instructor at United States Navy ship simulators.[8]

Shell filed its reply on March 16, 2012.[9]  With its reply, it included sworn declarations from William Kupchin, the Aviation Manager for Shell's planned Arctic operations;[10] Stephen Phelps, the Exploration and Appraisal Manager for the summer drilling plans;[11] and John Kaighin, the Marine Manager responsible for all vessels supporting the Arctic operations.[12]  In addition, Shell filed extensive exhibits with the court including both

---

[4]  Docket 37.

[5]  Docket 40.

[6]  Docket 41.

[7]  Docket 42.

[8]  Docket 43 ¶ 7.

[9]  Docket 61.

[10]  Docket 62.

[11]  Docket 64.

[12]  Docket 66.

information about its drilling plans as well as documentation regarding Greenpeace USA, Greenpeace International, and other Greenpeace offices.[13]

A hearing on the Motion for Preliminary Injunction was held on March 19, 2012. Counsel for both parties presented arguments to the court; in addition, Mr. Wetterer testified on behalf of Greenpeace USA.

Also on March 19, 2012, Greenpeace USA filed a motion seeking dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging that this court lacked subject matter jurisdiction to hear this controversy.[14]   Shell's opposition to that motion is due on March 30, 2012; Greenpeace USA's reply is due on April 6, 2012.[15]   In addition, by motion filed on March 21, 2012, Greenpeace USA has sought dismissal of this action based upon Federal Rule of Civil Procedure 12(b)(6), alleging that Shell has failed to state a claim upon which relief may be granted.[16]

Greenpeace USA also filed a separate motion on March 19, 2012 seeking to have this court stay its ruling on Shell's Motion for Preliminary Injunction pending a decision on Greenpeace USA's Rule 12(b) motions.  Shell opposed the stay motion on March 23, 2012, unless this court extends the Temporary Restraining Order currently in place and adds additional support vessels to that order.[17]   On March 27, 2012, Greenpeace USA replied.  It

---

[13]  Docket 63, Exs. 1001 - 1078.

[14]  Docket 69.

[15]  Docket 82.

[16]  Docket 75.

[17]  Docket 79.

indicated its continuing request for the stay, and its opposition to any further extension of the Temporary Restraining Order, which expires on this date.[18]

### *Greenpeace USA's Motion to Dismiss for Lack of Subject Matter Jurisdiction*

A district court may not grant a preliminary injunction if it lacks subject matter jurisdiction over the claim before it.[19]   Therefore, the jurisdictional question raised by Greenpeace USA's Rule 12(b)(1) motion must be considered before evaluating Shell's motion for a preliminary injunction, as the latter issue is moot if this court is without subject matter jurisdiction.

Greenpeace USA's Rule 12(b)(1) motion is not yet ripe, as Shell has not yet had the opportunity to file its response to the motion.  However, this court has fully reviewed the motion, and also heard argument of counsel with respect to subject matter jurisdiction at the recent hearing on Shell's motion for a preliminary injunction.  Although there are components of Greenpeace USA's Rule 12(b)(1) motion as to which this court will defer a ruling pending the completion of briefing on the motion, this court finds that there are components of Greenpeace USA's motion that are without merit, such that the motion should be denied in part at this time, and particularly given the fact that the Temporary Restraining Order currently in effect will expire by its terms on this day -- March 28, 2012 -- before the briefing on the Rule 12(b)(1) motion is completed.

---

[18]  Greenpeace USA's Reply to Opp'n to Mot. for Stay of Prelim. Inj. (Docket 83).

[19]  *Cooper Indus, Inc. v. U.S. E.P.A*, 775 F. Supp. 1027, 1036 (W. D. Mich. 1991) (citing *City of Alexandria v. Helms*, 728 F.2d 643, 645–46 (4th Cir. 1984); *Neighborhood Toxic Cleanup Emergency v. Reilly*, 716 F.Supp. 828, 830 (D.N.J. 1989)).  *See also* WRIGHT & MILLER, FED. PRAC. & P. § 2941 at 35 [hereinafter WRIGHT & MILLER].

Greenpeace USA's Rule 12(b)(1) motion first asserts that diversity jurisdiction does not exist.  Greenpeace USA's primary concern in this regard may now be resolved, since the Second Amended Verified Complaint alleges that the matters in controversy exceed the sum or value of $75,000.[20]  However, this court will defer a ruling on this issue pending the completion of briefing by the parties on the motion.  Specifically, the parties' briefing should address whether diversity jurisdiction exists and/or is necessary for this court to have subject matter jurisdiction with respect to Shell's motion for injunctive relief at land-based facilities.  No immediacy for a ruling on these facilities has been demonstrated, because the injunctive relief that Shell currently seeks with respect to land-based facilities would apply solely to aviation facilities in Barrow, Alaska, which presumably will not be in use by Shell for at least several weeks.[21]

Greenpeace USA's motion also asserts that federal question jurisdiction does not exist with respect to Shell's complaint against it.  28 U.S.C. § 1333 provides as follows:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled …

"The traditional domain of admiralty jurisdiction is, of course, the sea, including waters within the ebb and flow of the tide."[22]

In assessing the scope of admiralty jurisdiction at this stage of the proceedings, it is helpful to distinguish between the territorial sea and U.S. ports on the one hand, and the

---

[20]  Second Am. Verified Compl. ¶ 13.

[21]  *See* Attach. A to Shell's Reply in Supp. of Mot. for Prelim. Inj. (Docket 61-1).

[22]  T. SCHOENBAUM, ADMIRALTY AND MARITIME LAW (5th Ed.) § 3-3 at 122 [hereinafter SCHOENBAUM].

U.S. Exclusive Economic Zone on the other hand.  The territorial sea extends 12 miles from the baseline shore.[23]

> Under international law the coastal [nation] has complete sovereignty over the seas, the air space, the seabed and the subsoil of this area … An exception to this sovereign control, however, is the right of innocent passage of foreign vessels.  No right of innocent passage in the air space above the territorial sea exists in the absence of an agreement or permission by the coastal state.[24]

The Exclusive Economic Zone begins at the outer limit of the territorial sea and extends 200 miles from the baseline of the coastal nation.[25]

Shell seeks to prevent the occurrence of illegal or tortious activities by Greenpeace USA on navigable waters with respect to Shell's contracted vessels.  The passage of such vessels on navigable waters is indisputably a commercial maritime activity, and it is this precise maritime activity that Shell has alleged that Greenpeace USA seeks to disrupt.  As explained by the United States Supreme Court,

> We determine the potential impact [on maritime commerce] of a given type of incident by examining its general character.  The jurisdictional inquiry does not turn on the *actual* effects on maritime commerce … Rather, a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity.[26]

If such disruption is likely, then it is clear that this court has admiralty jurisdiction, at least at United States ports and within the territorial sea of the United States.  Given that Shell has alleged that Greenpeace USA seeks to disrupt Shell's maritime activities at U.S. ports and

---

[23]  *See generally id.* § 2-13 at 45.

[24]  *Id.* § 2-14 at 44.

[25]  *Id.* § 2-16 at 46.

[26]  *Sisson v. Ruby,* 497 U.S. 358, 363 (1990).

within the territorial sea, it is clear that this court has admiralty jurisdiction over Shell's action against Greenpeace USA in these areas.[27]

With respect to the Exclusive Economic Zone and land-based facilities, this court will defer the determination of Greenpeace USA's Rule 12(b)(1) motion to dismiss until the briefing is completed by the parties on that motion. Deferral of the parameters of subject matter jurisdiction in those areas is warranted for two reasons. First, the Shell-contracted vessels are not scheduled to begin exploratory drilling until approximately July 1, 2012. By then, they are scheduled to be within the Exclusive Economic Zone, but there is no urgency with respect to the actual drilling sites prior to the completion of the briefing of the motions to dismiss. Second, although this court likely has some degree of subject matter jurisdiction in the Exclusive Economic Zone by virtue of the Outer Continental Shelf Lands Act ("OCSLA"),[28] the delineation of any injunctive relief in the Exclusive Economic Zone should occur after the precise parameters of that subject matter jurisdiction have been determined by this court under the OCSLA, general admiralty jurisdiction, and any other basis.

Greenpeace USA also asserts in its Rule 12(b)(1) motion to dismiss that there is no current case or controversy because the New Zealand incident cannot be attributed to Greenpeace USA, and with respect to any future activity by Greenpeace USA, Shell has

---

[27] Whether and to what extent this court may have subject matter jurisdiction over these waters under other bases can be addressed as warranted in further proceedings.

[28] 43 U.S.C. § 1331 *et seq.* Although Shell has asserted jurisdiction under § 1349 of the OCSLA, that section would appear to apply to citizen suits alleging violations of the act. The court would seek input from both parties in their briefing on the Rule 12(b)(1) motion as to the import of § 1333(a)(1) of the OCSLA. *See generally* SCHOENBAUM § 3-9 at 172-178.

not shown that it is "immediately in danger of sustaining some direct injury."[29]   Instead, Greenpeace USA asserts that Shell has demonstrated only that "Greenpeace USA may or could do something in the future" and that this court should not maintain jurisdiction "based on Shell's conjecture or hypothetical possibilities."[30]   This argument is closely related the requirement that a plaintiff seeking a preliminary injunction must establish that there is a likelihood of irreparable harm in the absence of preliminary relief, and is discussed in that context further herein.  But an "injury need not have been inflicted when application [for injunctive relief] is made or be certain to occur[.]"[31]   Indeed, "[r]equiring a showing of actual injury would defeat the purpose of the preliminary injunction, which is to prevent an injury from occurring."[32]   The current record before this court, as discussed further herein, demonstrates the existence of a case or controversy with respect to Greenpeace USA's potential future conduct.

Thus, in light of the foregoing, this court finds that it has subject matter jurisdiction with respect to the ports of the United States and its territories, together with the territorial waters of the United States, and Greenpeace's Rule 12(b)(1) motion as well as its motion to stay are denied with respect to those areas.  Greenpeace USA's motion to stay a ruling on Shell's Motion for Preliminary Injunction is granted with respect to land-based facilities and

---

[29] Greenpeace USA's Mem. in Supp. of Mot. to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) at 33 (Docket 69).

[30] *Id.* at 34.

[31] *Diamontiney v. Borg*, 918 F.2d 793, 795 (9th Cir. 1990) (citing 11C WRIGHT & MILLER FED. PRAC. & P. § 2948 at 437-38 (1973)).  *See also* WRIGHT & MILLER § 2948.1 at 135 (citing *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("The purpose of an injunction is to prevent future violations … and, of course, it can be utilized even without a showing of past wrongs. . . ).

[32] *Diamontiney,* 918 F.2d at 795.

the United States Exclusive Economic Zone pending the completion of briefing by the parties on Greenpeace USA's Rule 12(b)(1) motion.

*Greenpeace USA's Motion to Dismiss for Failure to State a Claim*

As noted above, Greenpeace USA has also recently filed a motion to dismiss pursuant to Civil Rule 12(b)(6) alleging that Shell has failed to state any viable cause of action against it.  This court has reviewed the motion and will defer ruling upon it pending the completion of briefing by the parties, particularly in light of Shell's recent amendment of its complaint.[33]  However, based on the court's review of the  motion, Greenpeace USA's motion to stay a ruling on Shell's Motion for Preliminary Injunction pending the determination of the Rule 12(b)(6) motion is denied.  The  following discussion is intended to guide the parties in their further briefing of the 12(b)(6) motion.

In its 12(b)(6) motion, Greenpeace USA has correctly acknowledged that maritime trespass has been recognized as a federal cause of action by the Fifth Circuit.[34]  Thus, in *Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers,* the Fifth Circuit held "that general common law and in particular the Restatement (Second) of Torts should control to determine the law of maritime trespass, in order to promote uniformity in general maritime law."[35]

---

[33]  Docket 86.

[34]  *See* Greenpeace USA's Mem. in Supp. of its Mot. to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) at 15-16 (Docket 76) (citing *Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.,* 959 F. 2d 49, 53 (5th Cir. 1992)).

[35]  959 F. 2d at 53.

Under the Restatement, one is subject to liability for trespass to chattels by intentionally intermeddling with property in the possession of another.[36] Greenpeace USA asserts that "the Restatement does not contemplate a cause of action for a threatened trespass."[37] But this assertion appears to be directly at odds with the Restatement itself. While a showing of actual trespass may be required in order to recover damages, the Restatement makes it clear that in appropriate cases, injunctive relief may be ordered for torts that are only threatened and have not actually occurred.[38]

In this regard, Section 933 of the Restatement of Torts provides that "the availability of an injunction against a committed *or threatened* tort depends upon the appropriateness of this remedy as determined by a comparative appraisal of the factors [that are] listed in § 936."[39] The commentary to Section 933 explains the meaning of the term "threatened tort":

> The expression "threatened tort," as used in … this Section, contemplates, as a condition for the grant of an injunction, a threat of sufficient seriousness and imminence to justify coercive relief … A defendant may threaten a tort not only by utterances that express an intention to commit a tort, but also by action or inaction that, under the circumstances, shows that there is a dangerous probability that he will commit a tort.  Indeed a common method of proving a threat of a future tort is by proving a past tort under conditions that render its repetition or continuance probable.  It is not necessary, however, to

---

[36]  *See generally* REST. 2D TORTS §§ 216 – 222.

[37]  Greenpeace USA's Mem. in Supp. of its Mot. to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) at 19 (Docket 76).

[38]  *See* REST. 2D TORTS § 933.

[39]  *Id.* (emphasis added).  Section 936 lists a number of factors for a court to consider when deciding a motion for injunctive relief.  However, this court has not relied upon those factors in considering Shell's motion for injunctive relief.  Instead, this court has applied the established precedent of the United States Supreme Court.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  *See also Pimentel v. Dreyfus*, __ F.3d __, 2012 WL 639302 (9th Cir. 2012).

prove past wrong.  Without that, the defendant's words and acts may establish the dangerous probability that is essential.[40]

The Restatement cautions that

> An injunction is not justified, however, by the mere fact that the defendant is in a position where he will be tempted to commit a tort, nor by the fact that persons in his position sometimes do commit torts, nor by the fact that the plaintiff fears that the defendant will commit a tort.[41]

The federal district court cited Section 933 of the Restatement in *Women Prisoners of Dist. of Columbia Dept. of Corrs. v. Dist. of Columbia* to explain its rejection of the defendants' argument there that "the common law of torts forbids injunctive relief to prevent future torts":

> In negligence actions where irreparable injury is threatened, a court may act by injunction to prevent harm before it occurs … The threatened tort must be of sufficient seriousness and imminence to justify coercive relief.[42]

This court will await completion of the briefing before ruling on Greenpeace USA's pending motion to dismiss pursuant to Rule 12(b)(6).  But in light of the foregoing preliminary analysis, this court will proceed to the merits of Shell's pending Motion for Preliminary Injunction with respect to the United States territorial sea and ports.

## *Shell's Motion for Preliminary Injunction*

Plaintiffs seeking preliminary injunctive relief must establish that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of

---

[40] REST. 2D TORTS § 933.

[41] *Id.*

[42] 899 F. Supp 659, 666 (D.D.C. 1995) (citing PROSSER AND KEETON ON THE LAW OF TORTS, Ch. 5, § 30 p. 165 n. 8 (5th ed. 1984); REST. 2D TORTS § 933).

preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest."[43] "Under the 'sliding scale' approach to preliminary injunctions observed in [the Ninth Circuit], 'the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.'"[44] But in any event, even with the sliding scale approach, "plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction."[45] Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."[46]

This court has previously assessed these factors when granting Shell's motion for a Temporary Restraining Order. The record now before the court is more developed. This order is based on the more recent submissions of both parties and arguments of counsel regarding the Motion for Preliminary Injunction. Upon review of that record, this court finds as follows:

---

[43] *Sierra Forest Legacy v. Ray*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter,* 555 U.S. at 20).

[44] *Pimentel v. Dreyfus*, __ F.3d __, 2012 WL 639302, *7 (9th Cir. 2012). *See also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (2011) (discussing post-*Winter* circuit split over continuing viability of the sliding scale approach and joining the Seventh and Second Circuits in retaining it).

[45] *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (emphasis in original). In *Winter*, the Supreme Court held that the mere possibility of injury is not enough; the movant must, at a minimum, demonstrate the likelihood of irreparable injury. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008) (the Supreme Court's "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.") (citations omitted).

[46] *Sierra Forest*, 577 F.3d at 1022 (citing *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)).

*1.  The likelihood of success on the merits*

As discussed above,[47] the law recognizes that a party may seek injunctive relief to prevent threatened illegal or tortious conduct.  To obtain injunctive relief, plaintiffs must show themselves to be

> under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.[48]

Here, Shell has submitted persuasive evidence that it is under threat of an injury in fact that is concrete and particularized.  Greenpeace USA's website opens to a photo of three polar bears on which the words "STOP SHELL" are prominently displayed.  The "O" in the word "STOP" has been replaced by Shell's logo surrounded by oil.[49]   The website encourages individuals to send an e-mail to the President of Shell US protesting Shell's Arctic exploration plans – an action that Shell is not seeking to enjoin in this litigation.  But Greenpeace USA's efforts to "stop Shell" are not limited to an e-mail campaign.  The record demonstrates that Greenpeace USA also fully endorsed the conduct the New Zealand activists involved in the incident with the Noble Discoverer, describing them as "our activists."  As that incident was pending, Greenpeace USA's website stated the following:

> Today a Shell drill ship attempted to sail towards the Arctic to begin drilling for oil off the coast of Alaska – but it didn't get far.  Activists are blocking the departure of the ship, which is scheduled to begin drilling in treacherous Arctic Waters later this year …

---

[47]  *See supra* at 8-11.

[48]  *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009).

[49]  *See, e.g.,* Ex. 1057 at 0008.

> Take action alongside our activists now.  Demand Shell stop their plans to put the fragile Arctic and its biodiversity at risk.[50]

At the hearing on the preliminary injunction motion, Greenpeace USA's general counsel, Thomas Wetterer, testified that peaceful direct action, including illegal activity, is one of the tools in Greenpeace USA's "big toolkit of tactics."[51]  And while Mr. Wetterer testified that coal is one of Greenpeace USA's priority campaigns, and that Shell's Arctic exploratory drilling plan was not a priority campaign, this court was not at all persuaded by that testimony, since it was so completely at odds with Greenpeace USA's website.[52]

This court has also considered Greenpeace USA's actions and inactions within the context of the global Greenpeace organization.  On the record currently before this court, Shell has not demonstrated that Greenpeace USA was directly involved in either the New Zealand or Finnish incidents involving Greenpeace activists on Shell-contracted vessels.  Nor is Shell seeking damages from Greenpeace USA for those incidents at this time.

But this court finds that the web pages and other materials of the various national Greenpeace organizations, including Greenpeace USA, and Greenpeace International demonstrate that stopping Shell and other oil companies from drilling in the Arctic is more likely than not one of the overall priority strategies of Greenpeace worldwide, as well as of Greenpeace USA.  The same or similar "STOP SHELL" photo has appeared on virtually all

---

[50]  Ex. 1058 at 0001.

[51]  Tr. of Prelim. Inj. Hearing at 109 (Docket 78).

[52]  With both parties' agreement, this court has recently viewed Greenpeace USA's website.  On March 26, 2012, the titles of the three articles on the home page listed under "In the spotlight" were: "23 years later and Shell has learned nothing from the Exxon Valdez disaster"; "Save the Arctic," which contains a portion of Shell's logo and begins, "Right this minute a global fleet of Arctic destroyers is speeding towards one of the last unspoiled places on earth.  The ships are part of oil giant Shell's mission to drill . . ."; and "Let's not blow up Mars before we get there, we just might need it," which addressed the Bering Sea.

of the various national Greenpeace organization web pages throughout the world.[53] Greenpeace describes itself as a worldwide organization, with "more than 40 Greenpeace offices around the world, with international coordination taking place through our headquarters in Amsterdam – making us one of the few environmental groups that truly works globally on environmental problems."[54]   Mr. Wetterer testified on behalf of Greenpeace USA that executive directors of each of the national Greenpeace offices meet regularly with Greenpeace International to determine an overall global strategy.[55]

Greenpeace USA's Executive Director is quoted in Greenpeace International's 2010 Annual Report as stating the following:

> Bold non-violent direct action took the struggle against climate change to one of its frontiers in 2010 – the Arctic Ocean.  Companies such as the UK's Cairn Energy see the Arctic's receding ice sheets as an opportunity to make profits from risky oil drilling operations. Greenpeace couldn't disagree more.  In August, our activists evaded Danish navy commanders and scaled Cairn's exploration rig off Greenland, halting the operation – we knew that, due to very tight deadlines, even a minor delay could have a major effect:  Cairn didn't find oil in 2010.[56]

Similarly, in a 2011 operation, Greenpeace activists again boarded a Cairn oil rig off the coast of Greenland.  One of the activists is quoted as stating:

> There's no way Cairn can drill for oil while we're hanging next to their drill bit, and it's going to be extremely difficult for them to remove our

---

[53]  *See* Ex. 1031-0001 to 0042.

[54]  Ex. 1002 at 0001.

[55]  Tr. of Prelim. Inj. Hearing at 108 (Docket 78).

[56]  Ex. 1014 at 0005.

survival pod.  To drill for oil here would be dangerous insanity.  We have to stop the Arctic oil rush.[57]

This court has also accorded a minor degree of weight to the fact that there is no sworn statement in this record from Greenpeace USA indicating that the organization will not attempt tortious or unlawful acts this summer against Shell.[58]  Instead, on March 23, 2012, Greenpeace USA's Executive Director posted an article on a Huffington Post blog that stated, "Arctic drilling is one of the great mistakes of our age and it will not be allowed to happen.  Whatever happens in court, Greenpeace will continue to oppose Shell's plans peacefully and vigorously. . ."[59]  As noted in the Restatement of Torts, "[a] defendant may threaten a tort not only by utterances that express an intention to commit a tort, but also by action or inaction that, under the circumstances, shows that there is a dangerous probability that he will commit a tort."[60]  This court finds that the natural response by Greenpeace USA to Shell's accusations against it would have been to deny any intention to commit illegal or tortious acts against Shell.  But no such response has been made by Greenpeace USA in this record.[61]

---

[57]  Ex. 1020 at 0001.

[58]  *See* Tr. of Prelim. Inj. Hearing at 153 (Docket 78).

[59]  Ex. 1, p. 2 to Decl. of Jeffrey W. Leppo (Docket 80).

[60]  REST. 2D TORTS § 933.  *See also* Fed. R. Evid. 801(d)(2) and Commentary ("When silence is relied upon [as an admission of a party opponent], the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue.").

[61]  *Cf. U.S. v. Henke*, 222 F.3d 633, 642 (9th Cir. 2000) ("The first issue is whether the court properly admitted Desaigoudar's out-of-court response – "next question please" – to an accusation in a press conference that the defendants were "cooking the books."  The district court found that . . . under the circumstances, the natural response to such an accusation would be to address or deny it.  It therefore admitted the statement as an adoptive admission. . . It was within its discretion to do so.").

This court also finds that threatened illegal or tortious conduct within U.S. controlled waters would be fairly traceable to Greenpeace USA, as the record demonstrates that Greenpeace USA controls all Greenpeace operations in the United States.[62] As such, this court finds it likely that granting preliminary injunctive relief against Greenpeace USA will likely prevent the injury Shell seeks to avoid.

This court has also considered the uncontradicted evidence Greenpeace USA presented to this court that its recent Florida training camp was unrelated to the concerns raised by Shell in this action.[63]   And counsel for Greenpeace USA correctly noted at the preliminary injunction hearing that the *Kulluk* has been at port in Seattle since last fall without any disturbance from Greenpeace USA.[64]   But upon consideration of all the evidence presently before this court with respect to the Motion for Preliminary Injunction, Shell has demonstrated by a preponderance of the evidence that it is likely that Greenpeace USA would intend to commit tortious or illegal acts against Shell's Arctic drilling operations in the absence of preliminary injunctive relief.

### 2.   The likelihood of irreparable harm in the absence of preliminary relief

The second component for injunctive relief requires consideration of the likelihood of irreparable harm to Shell if preliminary relief is not accorded to it.  Greenpeace USA asserts that if it is successful in stopping Shell from drilling in the Arctic this summer, it would not cause Shell any irreparable harm.  Rather, Greenpeace USA asserts "it would result in a

---

[62]  *See* Tr. of Prelim. Inj. Hearing at 125 (Docket 78); Ex. 1068-0002.

[63]  Decl. of Nathan Santry at 2 (Docket 42).

[64]  *See* Tr. of Prelim. Inj. Hearing at 148 (Docket 78).

delay of a season, for which they can put a dollar figure."[65]  Greenpeace USA correctly maintains that economic damages are not traditionally considered irreparable harm because an economic injury can be later remedied by a damages award.  "[I]f plaintiff either can bring a legal action and seek damages that will compensate him fully, or if plaintiff can assert his claim as a defense in some other proceeding, the alternative remedy is adequate,"[66] and equitable relief should be denied.

"The mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'"[67]  As Wright & Miller have explained:

> [I]f plaintiff shows that a monetary award would be speculative because the amount of damage would be difficult or impossible to measure, or if plaintiff demonstrates that effective legal relief can be secured only by a multiplicity of actions, as, for example, when the injury is of a continuing nature, so that plaintiff would be required to pursue damages each time he was injured, equitable relief will be deemed appropriate. Plaintiff also may satisfy the adequacy prerequisite by demonstrating that damages would not adequately compensate him. Illustratively, if defendant's acts pose a threat to some unique property interest, so that the injury will be irreparable and damages will not compensate for the loss of that property, the court may issue an injunction inasmuch as there is no adequate legal remedy.[68]

In *Continental Airlines v. Intra Brokers, Inc.*, a Ninth Circuit case, Continental brought suit against a travel agency for the unauthorized resale of Continental-issued discount coupons, against the terms printed on the coupons and Continental's express

---

[65] *Id.* at 150.

[66] WRIGHT & MILLER § 2944.

[67] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).

[68] WRIGHT & MILLER § 2944.

instructions.[69]  Though Continental was unable to establish definitively how it would be harmed, the Ninth Circuit did not see this as a bar to the availability of an equitable remedy:

> This difficulty of establishing economic harm to Continental, lack of proof of damages, and possible immeasurability or unascertainability of harm, does not mean Continental was not harmed. . . ."where the threat of injury is imminent and the measure of that injury defies calculation, damages will not provide a remedy at law."[70]

Accordingly, the court found that "[t]he difficulty and probable expense of establishing the amount of economic harm supports the proposition that damages would be an inadequate remedy."[71]  Similarly, this court finds that if Greenpeace USA successfully disrupted Shell's operations, calculating the amount of economic harm would be very difficult.

Greenpeace USA cites to *Rent-A-Center, Inc. v. Canyon Televisions and Appliance Rental,* a case which involved a dispute between a buyer and seller of a business with respect to a covenant not to compete.[72]  But there, the district court's preliminary injunction was upheld based on a finding that the purchaser's potential losses were not solely economic, but also involved intangible injuries, such as damage to advertising efforts and goodwill, which the Ninth Circuit held constituted irreparable harm.

Similarly, the harms alleged by Shell are not purely economic.  The declarations submitted by Shell in support of its motion persuasively demonstrate that illegal or tortious efforts to board or interfere with the vessels would be likely to "present unacceptable risks

---

[69]  24 F.3d 1099 (9th Cir. 1994).

[70]  *Id.* at 1105.

[71]  *Id.*

[72]  944 F. 2d 597, 603 (9th Cir. 1991).

to human life, property and the environment."[73]  With respect to Shell's planned activities in U.S. ports and within U.S. territorial waters, this court was fully persuaded by Shell's declarations as to the likelihood of irreparable harm to human life, property, and/or the environment if Greenpeace USA activists were to attempt actions similar to those undertaken by other Greenpeace activists in New Zealand, Finland, or off the coast of Greenland.  It is well established that demonstrated risks to health and safety constitute the type of irreparable harm for which there is no adequate remedy at law.[74]  In sum, based on the record before this court, Shell has demonstrated a likelihood of irreparable harm in the absence of preliminary injunctive relief.

### 3.  The balance of the equities

The third requirement that a moving party must show in order to obtain a preliminary injunction is that the balance of equities tips in its favor.

Over the next several weeks, Shell plans to mobilize its 2012 Arctic exploration fleet.  By July, it seeks to conduct legally authorized exploration activities on federally managed

---

[73]  Decl. of Stephen J. Phelps at 4 (Docket 64).  Although the aviation operations are not before the court at this time, this court found particularly compelling the declaration of William Kupchin regarding the safety risks with respect to aviation operations.  This court was not persuaded by Greenpeace's expert's declaration that described the presence of Greenpeace aircraft flying overhead of Shell's drilling operations as "little more than an annoyance – not a safety threat."  Rather, this court was persuaded by Mr. Kupchin's declaration on behalf of Shell, which clearly explained the significant safety risks that would be presented were Greenpeace aircraft to fly near Shell's drilling operations over the Outer Continental Shelf.  *See* Decl. of Stephen J. Phelps at 13-15 (Docket 64); Decl. of John Kaighin at 4-7 (Docket 66).

[74]  *See, e.g., Heather K. by Anita K. v. City of Mallard, Iowa*, 887 F. Supp. 1249, 1266 (N.D. Iowa 1995) ("As to 'irreparable harm,' continued open burning poses a very real health threat, possibly even a mortal threat, to Heather K. for which she has no adequate remedy at law."); *Texaco Indep. Union of Coraopolis Terminal v. Texaco, Inc.*, 452 F. Supp. 1097, 1107 (D.C. Pa. 1978) ("no adequate remedy at law or in arbitration" for threats to health and safety of employees) (citing *United Steelworkers v. Blaw-Knox Foundry and Mill Mach., Inc.*, 319 F. Supp. 636, 641 (W.D. Pa.1970)).

Outer Continental Shelf oil and gas leases in the Beaufort and Chukchi Seas.  To the extent that the competing interests of Greenpeace USA are illegal or tortious activities, the balance of equities undoubtedly tips to Shell.[75]  But Greenpeace USA asserts that according preliminary injunctive relief to Shell that includes safety zones around Shell's vessels would impinge upon Greenpeace USA's rights to monitor Shell's activities and engage in other legal activities in protest against Shell's Arctic drilling activities.[76] Greenpeace USA correctly notes that the OCSLA recognizes the important role that environmental organizations such as Greenpeace USA may play in legal proceedings regarding the development of the Outer Continental Shelf.[77]  And certainly Greenpeace USA's members have a First Amendment right to protest vigorously against Shell's exploration drilling activity, so long as such protest is done in a manner consistent with the law.  This court acknowledges that the establishment of safety zones in a preliminary injunction that limits Greenpeace USA from approaching too close to Shell's vessels could have an impact on Greenpeace USA's otherwise legal activities.

Greenpeace USA cites to the U.S. Supreme Court's decision in *Schenck v. Pro-Choice Network of Western New York* in support of its position.[78]  *Schenck* addressed the constitutionality on First Amendment grounds of an injunction preventing abortion protestors who had a history of blockading, barricading, and trespassing at abortion clinics

---

[75] *See., e.g., Dish Network LLC v. Delvecchio*, 2011 U.S. Dist. LEXIS 116019, *17 (W.D.N.Y. 2011) (where "[t]he only hardship to Defendant from this injunction would be to prevent him from engaging in further illegal activity . . . the balance [of hardships] clearly weighs in Plaintiffs' favor.").

[76] Greenpeace USA's Opp'n to Mot. for Prelim. Inj. at 32-33.

[77] *Id.* at 32 (citing *Ctr. for Biological Diversity v. U.S. Dept. of Interior*, 563 F.3d 466, 479 (D.C. Cir. 2009)).

[78] 519 U.S. 357 (1997).  *See* Greenpeace USA's Opp'n to Mot. for Prelim. Inj. at 35-36.

from entering fixed and floating buffer zones around the clinics.  The fixed buffer zones banned the protestors from demonstrating within 15 feet of designated areas at the clinics; the floating buffer zones banned most of the protestors from demonstrating 15 feet from any person or vehicle seeking access to or leaving the clinics.

The Supreme Court identified the mechanism for determining the constitutionality of an injunction restricting speech, which it had formulated in *Madsen v. Women's Health Ctr., Inc.*:  if the injunction burdens no more speech than necessary to serve a significant government interest, it does not offend the First Amendment.[79]  After identifying the relevant government interests as "ensuring public safety and order,  promoting the free flow of traffic on streets and sidewalks, protecting property rights, and protecting a woman's freedom to seek pregnancy-related services,"[80] the *Schenck* Court found the *floating* buffer zones unconstitutional because the safety and practicality issues associated with the moving zones would unduly burden the protestors' speech.[81]  However, the Court upheld the injunction's *fixed* buffer zones as not unduly burdensome.[82]

But central to the Supreme Court's ruling in *Schenck* was its observation that speech on public sidewalks is a "protypical example of a traditional public forum."[83]  In contrast,

---

[79]  *Schenck,* 519 U.S. at 372 (citing *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994)).

[80]  *Id.* at 376.

[81]  *Id.* at 377-80.  This court recognizes that the safety zones proposed here by Shell are, in a literal sense, *floating*.  But this court finds that the *Schenck* Court's ruling on the unconstitutionality of floating buffer zones is sufficiently distinguishable because of *Schenck*'s decidedly non-aquatic context.

[82]  *Id.* at 380-81.

[83]  *Id.* at 377.

the ports and territorial sea of the United States clearly do not constitute such a forum. Rather, these are areas in which the safe operation of marine commerce is a significant public interest.  And unlike the employees and patients going to the abortion clinics, Greenpeace USA's targeted audience would presumably not be on the territorial sea. Greenpeace USA is free to espouse its message away from Shell's vessels.[84]  If fixed buffer zones on trafficked public sidewalks are constitutional under *Schenck*, then safety zones surrounding Shell's vessels while moving at sea are certainly constitutionally permissible.  By carefully tailoring preliminary injunctive relief to focus on illegal and tortious conduct, and minimizing any impact on Greenpeace USA's right to monitor the activities and peacefully protest against Shell within the confines of the law, this court concludes that the balance of the equities remains solidly tipped in Shell's favor.

### 4.  The injunctive relief must be in the public interest

"The public interest analysis for the issuance of a preliminary injunction requires us to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief."[85]  The public interest is not disserved by an injunction that precludes illegal or tortious conduct.[86]  And for much the same reason that this court has concluded that the balance of equities tips in favor of preliminary injunctive relief, this court concludes that so long as the scope of injunctive relief is narrowly tailored, then the impact

---

[84]  The *Schenck* Court additionally explained that the prophylactic measure of an injunction was particularly appropriate to the situation, as police were unable to respond quickly to problems due to the nature of the protest.  *Id.* at 382.  This court finds that rationale applicable to this case as well for vessels at sea.

[85]  *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 596 F.3d 1098, 1114-15 (9th Cir. 2010) (citation omitted).

[86]  *See., e.g., Dish Network LLC v. Delvecchio*, 2011 U.S. Dist. LEXIS 116019, *17 (W.D.N.Y. 2011).

on Greenpeace USA's legitimate interests in monitoring and legally protesting Shell's activities can be minimized.   A key factor here is to insure that Greenpeace USA is accorded ample alternative means of communicating its message to its intended audience.[87]

Based on the foregoing analysis, this court finds that Shell is entitled to a preliminary injunction with respect to the vessels it intends to employ during its 2012 Arctic exploratory drilling activities, with such injunctive relief at this time limited to ports within the United States and its territories, and the United States 12-mile territorial sea.

*Scope of the Preliminary Injunction*

    *1.  Persons to be bound by the injunction.*

Shell's proposed Preliminary Injunction would extend the reach of the order to Greenpeace USA as well as its "agents, servants, employees, members and affiliates, and all others acting in concert or participation with Greenpeace, Inc."[88]  This language differs from the language set forth in Civil Rule 65(d)(2) – which indicates that the order may extend to "the parties' officers, agents, servants, employees, and attorneys,"  as well as "other persons who are in active concert or participation" with any of the above-described persons.[89]

---

[87] *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 655 (1981) ("The First Amendment protects the right of every citizen to 'reach the minds of willing listeners and to do so there must be opportunity to win their attention.'") (citation omitted); *Schenck,* 519 U.S. at 377.

[88] *See* Attach. A to Shell's Reply to Mot. for Prelim. Inj. (Docket 61-1).

[89] Fed. R. Civ. P. 65(d)(2)(B) and (C).

This court declines to deviate from the precise language of Civil Rule 65(d) regarding the identification of those persons to be bound by the injunction.[90]

### 2. Publication of the injunction

Shell seeks to require Greenpeace USA to publish the injunction on its website. The case law cited by Shell upholding such requirements addressed illegal activity in commercial contexts.  In Shell's primary authority on this subject, *U.S. v. Schiff*, the Ninth Circuit explicitly stated that it was upholding the district court's publication order on the basis of the government's authority "to regulate content to prevent the deception of customers" in "commercial settings."[91]  As Greenpeace USA is a non-profit entity, the facts before this court are markedly different from the cases cited by Shell.  Even if the First Amendment is not implicated, this court declines to order this form of preliminary injunctive relief at this time.

### 3. Establishment of safety zones

Shell has sought to have moving safety zones established around each of its vessels included within the terms of a preliminary injunction.  Through the declaration of John Kaighin,[92] Shell has persuasively demonstrated that its proposed safety zones for each of the vessels are warranted while the vessels are in transit in U.S. territorial waters. This court was not persuaded by counsel for Greenpeace's argument at the hearing on the motion for the preliminary injunction that safety zones of this nature could be problematic

---

[90]  *See generally* WRIGHT & MILLER § 2956 at 356-357.

[91]  379 F.3d 621, 631 (9th Cir. 2004) (citing *Zauderer v. Office of Disciplinary Counsel of the Sup. Ct. of Ohio*, 471 U.S. 626, 650–51 (1985)).

[92]  Docket 66.

because they might require a Greenpeace vessel to depart from basic navigational principles in order to comply with this court's order, which would be unexpected by other mariners.[93]   Nor was the declaration of Captain Ford on behalf of Greenpeace USA persuasive in this regard.[94]  His assertion that the establishment of a safety zone solely for Greenpeace USA would violate the International Rules for the Prevention of Collisions at Sea (Navigation Rules) and the International Convention on the Law of the Sea (UNCLOS) was not persuasive to this court because he did not point to any provision in those rules that would preclude a court from enjoining one limited set of vessels from approaching too close to another limited set of vessels.

## CONCLUSION

Shell's Motion for a Preliminary Injunction is GRANTED in part at this time, and IT IS ORDERED as follows:

1. This order applies to each of the following vessels when located within all United States navigable and territorial waters (i.e., within 12 miles of the baseline shore), and when located in port within the United States and its territories:

    i. *Noble Discoverer*
    ii. *Kulluk*
    iii. *Nordica*
    iv. *Fennica*
    v. *Toisa Dauntless*
    vi. *Tor Viking II*
    vii. *Harvey Explorer*
    viii. *Harvey Spirit*
    ix. *Harvey Sisuaq*
    x. *Aiviq*

---

[93]  Tr. of Prelim. Inj. Hearing at 159-60 (Docket 78).

[94]  Docket 43.

      xi.   *Nanuq*
     xii.   *Guardsman*
    xiii.   *Klamath*
    xiv.   *Arctic Challenger*
     xv.   *Z Big 1*
    xvi.   *Lauren Foss*
   xvii.   *Corbin Foss*
  xviii.   *Arctic Endeavour*
   xix.   *Point Oliktok*

2. With respect to each of the above-described vessels, Greenpeace, Inc. (also known as Greenpeace USA) and its officers, agents, servants, employees, and attorneys, and all others who are in active concert or participation with Greenpeace, Inc. (also known as Greenpeace USA) and/or its officers, agents, servants, employees, and attorneys, (collectively "Greenpeace"), who receive actual notice of this order by personal service or otherwise, are enjoined from:

a. Breaking into or trespassing on the vessels;

b. Tortiously or illegally interfering with the operation, movement or progress of the vessels;

c. Barricading, blocking, or preventing access to or egress from the vessels; and

d. Tortiously or illegally endangering or threatening any employee, contractor or visitor of Shell or any of its affiliates who is present on, or as they enter or exit, the vessels.

3. Greenpeace, Inc. (also known as Greenpeace USA) and its officers, agents, servants, employees, and attorneys, and all others who are in active concert or participation with Greenpeace, Inc. (also known as Greenpeace USA) and/or its officers, agents, servants, employees, and attorneys, (collectively

"Greenpeace"), who receive actual notice of this order by personal service or otherwise, are enjoined from entering the safety zones established by paragraph 4 of this Order.

4. The following safety zones are established:

   a. From the date of this order until October 31, 2012, while in transit upon U.S. navigable and territorial waters (i.e., within 12 miles of the baseline shore), around the following vessels (including surface and subsurface areas):

| | | |
|---|---|---|
| i. | *Noble Discoverer:* | 1000 meters (m). |
| ii. | *Kulluk:* | 1000 m. |
| iii. | *Nordica:* | 500 m. |
| iv. | *Fennica:* | 500 m. |
| v. | *Toisa Dauntless:* | 500 m; 1000 m when towing. |
| vi. | *Tor Viking II:* | 500 m; 1000 m when towing. |
| vii. | *Harvey Explorer:* | 500 m. |
| viii. | *Harvey Spirit:* | 500 m. |
| ix. | *Harvey Sisuaq:* | 500 m |
| x. | *Aiviq:* | 500 m; 1000 m when towing. |
| xi. | *Nanuq:* | 500 m. |
| xii. | *Guardsman:* | 500 m. |
| xiii. | *Klamath:* | 500 m; 1000 m when under tow. |
| xiv. | *Arctic Challenger:* | 500 m; 1000 m when under tow. |
| xv. | *Z Big 1:* | 500 m; 1000 m when under tow. |
| xvi. | *Lauren Foss:* | 500 m; 1000 m when towing. |
| xvii. | *Corbin Foss:* | 500 m; 1000 m when towing. |
| xviii. | *Arctic Endeavour:* | 500 m; 1000 m when under tow. |
| xix. | *Point Oliktok:* | 500 m; 1000 m when towing. |

   b. Each of the above-listed safety zones in subparagraph (a) shall be reduced to 100 meters for vessels transiting through narrow channels designated as piloted waters.

5. Pursuant to this court's Temporary Restraining Order, Shell has deposited with the clerk of court a cash bond in the amount of Five Thousand Dollars

($5,000.00).  Shell shall maintain the deposited cash bond for purposes of this Preliminary Injunction.

6. This Preliminary Injunction is effective as of the date of this order and shall remain in effect until October 31, 2012 unless modified by further order of this court.  Greenpeace USA may by motion seek to modify this order so as to permit Greenpeace to more closely monitor Shell's activities within the safety zones established by this order at such specific times, locations, and conditions that this court may order after each party has been accorded an opportunity to be heard on any such motion.

7. Greenpeace USA's Motion for Stay of Preliminary Injunction Pending Resolution of Motions to Dismiss is granted in part with respect its Rule 12(b)(1) motion concerning Shell's land-based facilities and its planned operations within the United States Exclusive Economic Zone.  The Motion to Stay is denied in all other respects.  Likewise, Greenpeace USA's motion to dismiss pursuant to Rule 12(b)(1) is denied with respect to United States territorial waters and ports as set forth in this order.  This court may enter a supplemental or revised Preliminary Injunction after determination of the remaining portions of Greenpeace USA's motions to dismiss that this court has deferred on this date.

DATED at Anchorage, Alaska, this 28th day of March, 2012 at 4:00 p.m.

/s/ Sharon L. Gleason
United States District Judge