**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| SHELL OFFSHORE INC., a Delaware corporation, and SHELL GULF OF MEXICO INC., a Delaware corporation, | |
| Plaintiffs, | |
| v. | |
| GREENPEACE, INC., a California corporation, and JOHN and JANE DOES 1-20, | |
| Defendants. | Case No. 3:12-cv-00042-SLG |

## ORDER RE ALL PENDING MOTIONS

# TABLE OF CONTENTS

*Introduction* ......................................................................................... 3

*I.*     *Greenpeace USA's Rule 12(b)(1) Motion to Dismiss* ........................... 4

    *A.*   Admiralty Jurisdiction.......................................................... 6

    *B.*   OCSLA Jurisdiction ............................................................ 9

    *C.*   Diversity Jurisdiction.......................................................... 12

    *D.*   Is There a Case or Controversy?........................................ 14

*II.*    *Greenpeace USA's Rule 12(b)(6) Motion to Dismiss* ...................... 15

    *A.*   Nuisance .......................................................................... 17

    *B.*   Tortious Interference with Contractual Relations ................ 24

    *C.*   Trespass and Trespass to Chattels.................................... 27

    *D.*   Conversion ...................................................................... 32

    *E.*   Interference with Maritime Navigation ............................... 34

*III.*   *Shell's Motion for Additional Preliminary Injunctive Relief, or Alternatively, for an Indicative Ruling* ........................................... 35

*IV.*   *Shell's Motion for Preliminary Injunction*.................................... 41

*Conclusion*........................................................................................ 43

*Introduction*

On March 28, 2012, this court entered a Preliminary Injunction Order solely with respect to the United States twelve-mile territorial waters and ports.[1] That order precludes Greenpeace Inc. ("Greenpeace USA"), and those acting in concert with it from coming within certain designated distances of certain ships that Shell Offshore Inc. and Shell Gulf of Mexico Inc. (collectively "Shell") intend to use this summer for exploratory Arctic drilling operations. This court deferred consideration of the scope of any injunctive relief with regard to Shell's planned operations at shore-based facilities and within the waters of the 200-mile United States Exclusive Economic Zone ("EEZ") pending the completion of the parties' briefing on two alternative motions to dismiss this action that had been filed by Greenpeace USA. Meanwhile, Greenpeace USA has filed an interlocutory appeal of the March 28, 2012 Preliminary Injunction Order to the Ninth Circuit Court of Appeals.[2]

Three motions that are now fully briefed include: (I) that portion of Greenpeace USA's motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) that was deferred when this court entered the Preliminary Injunction Order on March 28, 2012,[3] (II) Greenpeace USA's motion to dismiss this action pursuant to Civil Rule 12(b)(6),[4] and (III) that portion of Shell's motion for injunctive relief that was deferred in

---

[1] Docket 87.

[2] *Shell v. Greenpeace, Inc.,* Appeal No. 12-35332 (filed Apr. 26, 2012).

[3] Docket 68 [hereinafter 12(b)(1) Mot.]; Docket 87 at 4 [hereinafter Prelim. Inj. Order].

[4] Docket 75 [hereinafter 12(b)(6) Mot.].

this court's order of March 28, 2012.[5]  Most recently, on May 14, 2012, Shell filed a Motion for Additional Preliminary Injunctive Relief, or Alternatively, for an Indicative Ruling, on shortened time.[6]  That motion has now been fully briefed as well.  All four pending motions are addressed in this order.

## I.  Greenpeace USA's Rule 12(b)(1) Motion to Dismiss

After Greenpeace USA had filed its two motions to dismiss, Shell filed its Second Amended Verified Complaint in this action.[7]  That complaint deleted some of the causes of action that Shell had initially asserted.  Shell now alleges five causes of action against Greenpeace USA: nuisance, tortious interference with contractual relations, trespass and trespass to chattels, conversion, and interference with maritime navigation.[8]  For the first four of these causes of action, Shell's Second Amended Complaint has alleged subject matter jurisdiction "under admiralty and maritime law, federal common law, and state law."[9]  As to the fifth cause of action, interference with maritime navigation, Shell has alleged subject matter jurisdiction under "admiralty and maritime law, and federal statutory law."[10]

Federal Rule of Civil Procedure 12(b)(1) provides that a party may seek dismissal of an action based on the assertion that the court lacks subject matter

_____

[5] Docket 6; Prelim. Inj. Order at 9.

[6] Docket 100 [hereinafter Mot. for Additional Relief].

[7] Docket 86 [hereinafter Second Am. Compl.].

[8] *Id.* at 11-18.

[9] *Id.* at 13, 14, 15, and 16.

[10] *Id.* at 18.

jurisdiction. Greenpeace USA maintains that none of the asserted bases for subject matter jurisdiction exists here. It maintains that diversity jurisdiction has not been demonstrated by the face of Shell's complaint and that there is no federal question jurisdiction under either 28 U.S.C. § 1331 or § 1333. Greenpeace USA also asserts that 43 U.S.C. § 1349(b), a provision from the Outer Continental Shelf Lands Act ("OCSLA"), does not support subject matter jurisdiction in this instance. And Greenpeace USA asserts that the International Regulations for Preventing Collisions at Sea ("COLREGS") do not confer subject matter jurisdiction with this court and that international law does not permit the exercise of United States law in this instance. Finally, Greenpeace USA argues that the requisite case or controversy is lacking.

"[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."[11] With respect to the alleged future tortious conduct by Greenpeace USA—the focus of the immediate dispute between the parties—this court has relied upon the assertions in the pleadings to determine the scope of subject matter jurisdiction. With regard to the role that Greenpeace USA may have had in the incidents in New Zealand and Finland, the current record on this topic is limited, but it demonstrates a genuine issue of material fact as to the role, if any, that Greenpeace

---

[11] *McCarthy v. U.S.*, 850 F.2d 558, 560 (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("when a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist."); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983) (consideration of material outside the pleadings did not convert a Rule 12(b)(1) motion into one for summary judgment)).

USA may have had in those incidents. Resolution of that factual dispute is not necessary to the determination of this Rule 12(b)(1) motion at this time.[12]

This court's March 28, 2012 Preliminary Injunction Order denied Greenpeace USA's Rule 12(b)(1) motion in part, and held that at a minimum, this court had admiralty jurisdiction pursuant to 28 U.S.C. § 1333 within the United States twelve-mile territorial sea and ports.[13] The balance of Greenpeace USA's 12(b)(1) motion is now addressed.

### A. Admiralty Jurisdiction

Shell has asserted that this court's admiralty or maritime jurisdiction under 28 U.S.C. § 1333 extends beyond the twelve-mile territorial sea with respect to each of the five causes of action it has pled in its Second Amended Complaint. Greenpeace USA asserts that this court's admiralty jurisdiction does not extend beyond the territorial sea and an additional twelve-mile contiguous zone.[14]

There are two components to the test for admiralty tort jurisdiction.[15] First, the incident must occur on navigable waters.[16] It is well established that this locality requirement includes the high seas as well as the United States Exclusive Economic

---

[12] In this regard, Shell is correct that while this court held on the limited record before it that "Shell has not demonstrated that Greenpeace USA was directly involved in either the New Zealand or Finnish incidents," this court did not find that Greenpeace USA was not directly involved with those incidents. Prelim. Inj. Order at 14.

[13] Prelim. Inj. Order at 5-7.

[14] Greenpeace USA's Reply at 2, n.1 (Docket 93) [hereinafter 12(b)(1) Reply].

[15] *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

[16] *Id.*

3:12-cv-00042-SLG, *Shell v. Greenpeace, Inc.*
Order re All Pending Motions
Page 6 of 43

Case 3:12-cv-00042-SLG   Document 108   Filed 05/29/12   Page 6 of 43

Zone ("EEZ").[17]  Second, a party seeking to invoke maritime jurisdiction must show "a substantial relationship between the activity giving rise to the incident and traditional maritime activity."[18]  In this regard, "a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt [maritime] commercial activity."[19]

The underlying bases of each of Shell's causes of action in its Second Amended Complaint are allegations that Greenpeace USA has interfered, and intends in the future to interfere, with the free passage of Shell's owned and contracted vessels and its planned Arctic drilling activities.  Greenpeace USA has separately analyzed subject matter jurisdiction with respect to the past alleged tortious conduct in the Gulf of Mexico, New Zealand, and Finland, and the alleged future threatened conduct within the United States EEZ and at land-based facilities.  As noted above, this court will not decide the full scope of subject matter jurisdiction with respect to the alleged past tortious conduct by Greenpeace USA in other locations at this time.  Rather, such analysis would be more effectively undertaken if and when a greater factual record with respect to Greenpeace USA's role in those actions is before the court.  But with respect to Shell's

---

[17] *Myhran v. Johns-Manville Corp,* 741 F.2d 1119, 1120 (9th Cir. 1984).  *See also Victory Carriers, Inc. v. Law*, 404 U.S. 202, 205 (1971) *and the cases cited therein*.  Under the Admiralty Extension Act, 46 U.S.C. § 30101, damages to shore structures and injuries on land may also fall within admiralty jurisdiction, so long as the injury is caused by a vessel on navigable water.  *See generally* T. Schoenbaum, *Admiralty and Maritime Law* (5th Ed.) § 3-4 [hereinafter *Schoenbaum*].

[18] *Sisson v. Ruby*, 497 U.S. 358, 364 (1990).  *See also Exec. Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268 (1972).

[19] *Sisson*, 497 U.S. at 363.  *See also Jerome B. Grubart, Inc.*, 513 U.S. at 534 ("Second, a court must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'") (citing *Sisson*, 497 U.S. at 365, 364, and n.2).

allegations of threatened future tortious conduct as set forth in the five causes of action of the Second Amended Complaint, this court finds that admiralty jurisdiction clearly applies to allegations of such misconduct directed toward Shell's vessels when they are in transit and unattached to the subsoil or seabed and within the United States EEZ.[20]

Greenpeace USA asserts that the *Noble Discoverer* and the *Kulluk* do not fall under admiralty jurisdiction because they are drilling rigs, and have no traditional maritime purpose.[21] But these movable drilling rigs are vessels,[22] as to which admiralty jurisdiction applies to claims of intentional tortious acts, at least while such vessels are underway to a drilling operation.[23] Further, admiralty jurisdiction would extend to aircraft to the extent such aircraft were being used for traditional maritime activity, such as bringing workers and supplies to off-shore vessels.[24]

---

[20] *See generally* Shell's Opp. to 12(b)(1) Mot. at n.22 through 26 (Docket 90) [hereinafter 12(b)(1) Opp.]. Many of the cited cases there support admiralty jurisdiction, but some—such as *Pelican Marine Carriers v. City of Tampa*, 791 F. Supp. 845 (M.D. Fla. 1992)—simply apply maritime law without addressing jurisdiction, while others—such as *Bankers Life Ins. Co. v. Scurlock Oil Co.*, 447 F.2d 997 (5th Cir. 1971)—have considerably less relevance to the matter at hand. In any event, this court finds that the exercise of admiralty jurisdiction over tort actions that meet the two-part test described *supra* is well-settled.

[21] 12(b)(1) Reply at 12.

[22] *See generally Offshore Co. v. Robinson*, 266 F.2d 769, 779-80 (5th Cir. 1959) (a special purpose vessel, a floating drilling platform, considered a vessel so as to confer admiralty jurisdiction). *See also In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico*, 808 F.Supp.2d 943, 949 (E.D. La. 2011); *Schoenbaum* § 3-6 at 157.

[23] After the drilling rig is secured to the seabed, the Outer Continental Shelf Lands Act, 43. U.S.C. § 1331 *et seq.*, may instead serve as the primary source of subject matter jurisdiction. *See* discussion, *infra* at 11-12.

[24] *See Offshore Logistics v. Tallentire*, 477 U.S. 207, 218-19 (1986) ("admiralty jurisdiction is appropriately invoked here under traditional principles because the [helicopter] accident occurred on the high seas and in furtherance of an activity bearing a substantial relationship to traditional maritime activity … the ferrying of passengers from an 'island,' albeit an artificial one, to the shore.").

With respect to Shell's fifth cause of action, interference with maritime navigation, Shell cites to the federal statutes, 33 U.S.C. § 1601 *et seq.*, which codify the COLREGS, as a separate basis for federal jurisdiction in addition to admiralty jurisdiction. This court was unpersuaded that these provisions serve as an independent basis to establish federal subject matter jurisdiction separate and apart from admiralty jurisdiction. Rather, this court concurs with the analysis of the import of the COLREGS in the recent District Court decision of *The Institute of Cetacean Research v. Sea Shepherd Conservation Society.*[25] The court there readily found admiralty jurisdiction applicable to the plaintiff's tort claims regarding alleged tortious conduct on the high seas that arose from traditional maritime activities. The COLREGS were discussed not as a separate basis for subject matter jurisdiction, but in the context of the plaintiff's safe navigation claim, with the court noting that "admiralty courts in the United States use the COLREGS to determine fault in maritime collision cases."[26]

### B. OCSLA Jurisdiction

43 U.S.C. § 1349(b)(1) establishes federal jurisdiction over OCSLA disputes as follows:

> Except as provided in subsection (c) of this section, the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation,

---

[25] 2012 WL 958545, *14 (W.D. Wash. Mar. 19, 2012).

[26] *Id.* at *14 (citing *Crowley Marine Servs. v. Maritrans, Inc.*, 530 F.3d 1169, 1172 (9th Cir. 2008)).

suspension, or termination of a lease or permit under this subchapter. Proceedings with respect to any such case or controversy may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the State nearest the place the cause of action arose.

43 U.S.C. § 1333(a)(1) defines the physical areas of the OCS to which the OCSLA applies, as it provides in pertinent part:

The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State . . .

Thus, Section 1333(a)(1) establishes a situs requirement that extends OCSLA jurisdiction to the subsoil and seabed of the OCS and artificial islands, installations, or other devices that are permanently or temporarily attached to the seabed in order to explore for, develop, or produce resources from the OCS.[27]  Accordingly, with respect to the operations of Shell's drilling rigs after they are temporarily attached to the seabed at

---

[27] This situs limitation in § 1333 (a) does not apply in cases involving the Longshore and Harbor Workers' Compensation Act that arise under 43 U.S.C. § 1333(b).  Instead, in such cases, "the OCSLA extends coverage to an employee who can establish a substantial nexus between his injury and his employer's extractive operations on the Outer Continental Shelf," even if the injury did not take place on the OCS.  But § 1333(b) is inapplicable in this action.  *Pac. Operators Offshore, LLP v. Valladolid*, 132 S. Ct. 680, 684 (2012).  *But cf. In re Oil Spill*, 747 F.Supp. 2d 704 at 708 n.1 ("neither the Supreme Court nor the Fifth Circuit has held that the [§ 1333] situs requirement has to be satisfied for jurisdiction to be proper under § 1349" of the OCSLA).

the OCS, the OCSLA, and not admiralty law, is the primary source of subject matter jurisdiction over Shell's claims of threatened torts.[28]

Distinct from the question of subject matter jurisdiction conferred by the OCSLA is the question of the applicable law to apply to disputes within OCSLA jurisdiction. All law applicable to the OCS is federal law, but to fill the substantial "gaps" in the coverage of federal law, the OCSLA borrows the "applicable and not inconsistent" laws of the adjacent state as surrogate federal law.[29] Thus, a tort action that did not bear a significant relationship to traditional maritime activities that involved events occurring at an OCS drilling site would be governed by federal law, the content of which could be borrowed from the law of the adjacent state.[30]

Greenpeace USA asserts that the OCSLA only accords subject matter jurisdiction after operations have commenced on the OCS.[31] It maintains that the "OCSLA provides no basis for an action for preparing an operation on the OCS, and

---

[28] "Admiralty law generally would not apply to the lands and structures covered by OCSLA." *Offshore Logistics*, 477 U.S. at 219 (citing *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 359 (1969)).

[29] 43 U.S.C. § 1333(a)(2); *Rodrigue*, 395 U.S. at 355-59.

[30] See *Gulf Offshore Co. v. Mobil Oil Corp*, 453 U.S. 473, 480-81 (1981); *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir.) (in resolving choice of law issue, the court held that "for adjacent state law to apply as surrogate federal law under OCSLA, three conditions are significant. (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.").

[31] 12(b)(1) Reply at 16.

provides no basis for a cause of action when nothing has yet occurred, or before the operation on the OCS has even begun."[32]  In this regard, Shell candidly notes that

> [t]he full reach of OCSLA jurisdiction in the context of this litigation cannot be determined with certainty based upon existing cases. Shell is aware of no case considering the jurisdictional application of OCSLA in the context of torts committed by a party with the intent of preventing an OCS leaseholder from accessing and exploring upon its leases, as is the case here.[33]

Yet the OCSLA was intended to facilitate the orderly development of resources on the Outer Continental Shelf.[34]  Consistent with that intent, this court finds that to the extent that the surrogate law borrowed from Alaska pursuant to 43 U.S.C. § 1333(a)(2)(A) would recognize a cause of action for a threatened tort at a prospective drilling site subject to OCSLA jurisdiction, the OCSLA confers subject matter jurisdiction with respect to such threatened torts before such drilling operations have commenced.

For the foregoing reasons, this court concludes that it has subject matter jurisdiction in the EEZ over Shell's tort claims pursuant to admiralty jurisdiction as well as federal question jurisdiction under the OCSLA, with the applicable jurisdiction depending on the situs of the alleged prospective tort and the nature of the alleged tortious activity.

### C. Diversity Jurisdiction

Pursuant to 28 U.S.C. § 1332(a), a federal court has diversity jurisdiction of all civil actions in which there is complete diversity of citizenship among the parties and the

---

[32] *Id.*

[33] 12(b)(1) Opp. at 13, n.45.

[34] *See, e.g., Schoenbaum* § 3-9 at 172-173.

amount in controversy exceeds the sum or value of $75,000.  Greenpeace USA does

not dispute that it is incorporated in a different state from Shell.[35]  And Shell's Second

Amended Verified Complaint expressly alleges that the amount in controversy exceeds

$75,000.[36]  Accordingly, diversity jurisdiction has now been adequately pled.

But Greenpeace USA asserts that if Shell obtains the preliminary injunctive relief

it seeks, "then none of the other alleged speculative damages will come to fruition."[37]  In

its response, Shell cites to United States Supreme Court precedent that when a party

seeks injunctive relief, "it is well established that the amount in controversy is measured

by the value of the object of the litigation."[38]  In other words, "the test for determining the

amount in controversy is the pecuniary result to either party which the judgment would

directly produce."[39]  Here, the object of the litigation is Greenpeace USA's alleged intent

to interfere with Shell's planned exploration activities for this summer in the Arctic.

Shell's Second Amended Complaint asserts that its drilling plans for the limited 2012

Arctic summer season have been "an enormous and costly effort."[40]  And "a complaint

that a plaintiff files in federal court against a diverse defendant invokes diversity

jurisdiction unless it appears to a 'legal certainty' that the amount in controversy is less

---

[35] Mem. in Support of 12(b)(1) Mot. at 12 (Docket 69) [hereinafter 12(b)(1) Mem.].

[36] Second Am. Compl. at ¶ 13.

[37] 12(b)(1) Mem. at 12.

[38] 12(b)(1) Opp. at 18 (Docket 90) (citing *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977)).  *See also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001).

[39] *In re Ford Motor Co.*, 264 F.3d at 958.

[40] Second Am. Compl. at ¶ 19.

than $75,000."[41] No such showing has been made here so as to defeat diversity jurisdiction. Accordingly, this court has diversity jurisdiction to consider the causes of action that are cognizable under Alaska law as pled in Shell's complaint.[42] Specifically with regard to Shell's request for injunctive relief at the aviation facilities on the North Slope, this court finds that it has subject matter jurisdiction over such claims based on diversity of citizenship.

### D. Is There a Case or Controversy?

Greenpeace USA asserts that this court lacks subject matter jurisdiction because there was no actual controversy between the parties at the time the complaint was filed.[43] It asserts that there is no justiciable controversy that is sufficiently definite and concrete so as to warrant relief. As this court previously noted, this argument is closely related to the requirement that a plaintiff seeking a preliminary injunction must establish that there is a likelihood of irreparable harm in the absence of preliminary relief.[44] As this court had concluded that there is such likelihood,[45] it follows that there is a case or controversy that is justiciable before the court.

---

[41] *Inst. of Cetacean Research,* 2012 WL 958545 at *7 (citing *Crum v. Circus Circus Enters.*, 231 F. 3d 1129, 1131 (9th Cir. 2000)).

[42] Wright & Miller, *Federal Practice & Procedure* § 3602.1 at 121, 132 (2009). Given that this court has federal subject matter jurisdiction with respect to the EEZ under admiralty jurisdiction and the OCSLA, as discussed herein, this court need not determine to what extent diversity jurisdiction under state law would apply to an action to enjoin conduct within the EEZ.

[43] *Id.* at 33.

[44] Prelim. Inj. Order at 8.

[45] *Id.* at 20.

For the foregoing reasons, Greenpeace USA's motion to dismiss for lack of subject matter jurisdiction under Civil Rule 12(b)(1) is denied.

## II.    Greenpeace USA's Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of an action for failure to state a claim for which relief can be granted. Greenpeace USA asserts that Shell has failed to state a claim for each of its five causes of action, warranting dismissal of its Second Amended Complaint.

In evaluating Shell's claims for purposes of Greenpeace USA's Rule 12(b)(6) motion, this court applies the "facial plausibility" pleading standard as analyzed by the Supreme Court in *Ashcroft v. Iqbal*.[46] Under that standard, to survive a Rule 12(b)(6) motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[47] This plausibility standard requires "more than a sheer possibility" of entitlement to relief, though it need not rise to the level of probability.[48] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.[49] But "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[50] Making such a

---

[46] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[47] *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[48] *Id.* (citing *Twombly*, 550 U.S. at 556).

[49] *Id.* (citing *Twombly*, 550 U.S. at 555).

[50] *Id.* at 679.

determination is "a context-specific task that requires the . . . court to draw on its judicial experience and common sense."[51]

One of Greenpeace USA's recurring arguments for dismissal is its assertion that Shell's complaint and the pleadings "demonstrate that Greenpeace USA, the defendant in this action, had no involvement in any of the harms Shell has alleged it has incurred in the past."[52] But as this court has previously found, at this preliminary stage of the litigation, the extent, if any, of Greenpeace USA's involvement in the New Zealand and recent Scandinavian actions is as yet undetermined.[53] For purposes of a Rule 12(b)(6) motion to dismiss, filed before discovery has been undertaken, this court is to assume the veracity of Shell's allegations that Greenpeace USA has acted in concert with other Greenpeace organizations in committing past tortious acts against Shell in other countries.[54] And in any event, this court has previously found that Greenpeace USA is likely to engage in future tortious activities against Shell in pursuit of its stated goal of stopping Shell's Arctic exploration—activities that could include blockading and boarding Shell-owned or Shell-contracted vessels that are in United States waters and en route to or operating in the Arctic.[55]

---

[51] *Id.* (citation omitted).

[52] Greenpeace USA's Mem. in Support of 12(b)(6) Mot. at 7 (Docket 76) [hereinafter 12(b)(6) Mem.].

[53] *See supra* n.12.

[54] *See, e.g.,* Second Am. Compl. at ¶¶ 9, 10, 37, 45, 49, 51, 56, 61, and 63.

[55] Prelim. Inj. Order at 17.

28 U.S.C. § 1333 provides that when a court hears a case pursuant to its admiralty or maritime jurisdiction, it "sav[es] to suitors in all cases all other remedies to which they are otherwise entitled." Based on this court's determinations set forth above on subject matter jurisdiction, this court will evaluate the first four of Shell's asserted causes of action under both federal maritime law, pursuant to the court's admiralty jurisdiction, and Alaska law, pursuant to the court's diversity and OCSLA jurisdiction. Shell's fifth cause of action, interference with maritime navigation, will be evaluated as pled under federal maritime law.[56]

### A. Nuisance

Shell's Second Amended Complaint alleges that Greenpeace USA has "intentionally and knowingly obstructed and interfered with the free passage and operation of the *Noble Discoverer*, the *Nordica*, the *Fennica* and the *Harvey Explorer*," and "threatens to further tortiously, unlawfully and substantially interfere with Shell's exercise of its OCSLA lease rights, and its rights of free passage upon navigable waters without obstruction or interference."[57] Shell asserts that these actions constitute both a public and a private nuisance.[58]

---

[56] *See* Second Am. Compl. at ¶ 57. *See also* discussion, *supra* at 9.

[57] *Id.* at ¶¶ 36, 35.

[58] *Id.* at ¶¶ 34-40 (First Cause of Action).

### 1) Public Nuisance

Shell asserts that federal courts applying maritime law have recognized public nuisance as a cause of action.[59]  Greenpeace USA maintains that "the Supreme Court has never recognized a cause of action for federal maritime public nuisance, and Congress has never legislated the same."[60]  Greenpeace USA also asserts that even if such a claim were cognizable, Shell has failed to state such a claim based on the Restatement (Second) of Torts ("Restatement") definition of that tort.[61]  And Greenpeace USA argues that Shell cannot make a claim based on "potential future nuisances."[62]

Shell asserts that Alaska state law also recognizes a cause of action for public nuisance claims.  In *Maier v. City of Ketchikan*, the Alaska Supreme Court cited to both Prosser on Torts and the Restatement in holding that,

> [t]o establish a claim based on public nuisance, it is not sufficient merely to show that one was injured by the creation or maintenance of some physical condition which would cause injury to a person coming into contact with it.  It must also be shown that the condition

---

[59] Shell's Opp. to 12(b)(6) Mot. at 10-11 (Docket 91) [hereinafter 12(b)(6) Opp.].  *See Nat'l Sea Clammers Assoc. v. City of New York*, 616 F.2d 1222, 1235 (3d Cir. 1980) (recognizing federal common law tort of nuisance and adopting Restatement (Second) of Torts definition) *vacated on grounds that private claims for water pollution public nuisance were preempted by federal statutes sub nom. Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Assoc.*, 453 U.S. 1 (1981); *S. C. Loveland, Inc. v. E. W. Towing, Inc.*, 608 F.2d 160, 167 (5th Cir. 1979) (using Restatement definition).  *But see State of La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1030 (5th Cir. 1985) (declining to recognize private cause of action for public nuisance) (cited in 12(b)(6) Opp. at 10 n.40).

[60] Greenpeace USA's Reply to Opp. to 12(b)(6) Mot. at 3 (Docket 94) [hereinafter 12(b)(6) Reply].

[61] *Id.* at 3-4.

[62] *Id.* at 5.

would be injurious to those who came in contact with it in the exercise of a public or common right.[63]

For purposes of this motion, this court will assume that Restatement standard for a public nuisance would apply under both federal maritime law and state law. Section 821B of the Restatement defines a public nuisance as "an unreasonable interference with a right common to the general public."[64]  It includes among those "circumstances that may sustain a holding that an interference with a public right is unreasonable . . . conduct [that] involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience."[65]

Shell has alleged that Greenpeace USA's intended actions would create a public nuisance "because of the inherent public dangers associated with" Greenpeace USA's alleged threatened tortious interference with Shell's OCS leases and Shell's "rights of free passage upon navigable waters without obstruction or interference."[66]  Shell asserts that Greenpeace USA's direct action campaign "threatens to impair the public right of navigation, the public right to free commerce, and will create risks of collision, allisions, and injuries to person and property and the environment."[67]  But Shell's complaint alleges an "international direct action campaign" directed solely against

---

[63] 403 P.2d 34, 38 (Alaska 1965), *overruled on other grounds by Johnson v. City of Fairbanks*, 583 P.2d 181, 183 n.4 (Alaska 1978).

[64] Restatement (Second) of Torts § 821B.

[65] *Id.*

[66] Second Am. Compl. at ¶¶ 38, 35 (Docket 86).

[67] 12(b)(6) Opp. at 13 (referencing Second Am. Compl. at ¶¶ 4,5, 19 and 35).

Shell.[68]   To constitute a public nuisance, "[t]here must be some interference with a *public* right."[69]   As alleged in Shell's complaint, Greenpeace USA's alleged past and future tortious conduct is not intended to, nor designed to, significantly and directly affect a public right.[70]   While there could be some incidental interference with the rights of third parties to free navigation if Greenpeace USA's alleged future tortious conduct were to occur, this court finds that the complaint as pled does not state a plausible cause of action for a public nuisance.   In this regard, this court considers the public highways and navigable rivers, where courts have found obstructions to constitute public nuisances, to be substantially different from the vast navigable waters within the territorial sea and the EEZ.   Accordingly, Greenpeace USA's motion to dismiss Shell's public nuisance claim is granted.

### 2)  *Private Nuisance*

Shell also asserts a claim for private nuisance in its Second Amended Complaint.   Specifically, it asserts that Greenpeace USA's past and threatened actions "constitute a private nuisance because the dangers inherent in their direct action campaign will be specifically borne by Shell and will unreasonably interfere with Shell's

---

[68] Second Am. Compl. at 2, ¶ 4.

[69] Restatement (Second) of Torts § 821B at Comment g (emphasis added).

[70] In this regard, Shell's Opposition refers to paragraph 35 of the complaint, and asserts that the public right alleged is the "free right of passage upon navigable waters without interference." 12(b)(6) Opp. at 14.   But that paragraph refers specifically to "*Shell's* exercise of its OCSLA lease rights, and its rights of free passage upon navigable waters without obstruction or interference"—not the *public's* right to free passage. Second Am. Compl. at ¶ 35 (emphasis added).

Case 3:12-cv-00042-SLG   Document 108   Filed 05/29/12   Page 20 of 43

use of its vessels and leases."[71] Shell candidly acknowledges that "Federal courts in admiralty have not yet expressly recognized a private nuisance cause of action, presumably due to the requirement that there be an unreasonable interference with a land or real property interest."[72] But Shell asserts that its rights in its OCS leases are a uniquely federal, protectable private property interest, and "the exercise of this private right is currently under threat of a substantial and unreasonable interference by Greenpeace USA."[73]

Greenpeace USA asserts that federal maritime law does not apply to Shell's OCS drilling contracts because those contracts are not maritime contracts.[74] Greenpeace USA cites to *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*[75] There, the Fifth Circuit held that contract disputes relating to the construction of an underwater gathering line on the OCS were "the subjects of oil and gas exploration and production" and were not "traditionally maritime activities."[76] As such, that court held that the OCSLA, and by extension, Louisiana state law, applied to that particular dispute instead of maritime law. But the Fifth Circuit has also noted that "[o]il and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce."[77]

---

[71] Second Am. Compl. at ¶ 39.

[72] 12(b)(6) Opp. at 16.

[73] *Id.* at 17.

[74] 12(b)(6) Reply at 9.

[75] *Id.* at 8 (citing *Union Tex. Petroleum Corp.*, 895 F.2d 1043 (5th Cir. 1990)).

[76] *Union Tex. Petroleum Corp.*, 895 F.2d at 1049.

[77] *Id.* at 1049 (citing *Theriot v. Bay Drilling Corp.*, 783 F.2d 527 (5th Cir.1986)).

This court need not determine at this juncture whether federal maritime law or state law, through the OCSLA,[78] applies to Shell's cause of action for a private nuisance, as this court finds that under either construct, the legal analysis would be consistent with the Restatement and thus substantially the same.[79]  Under general maritime law, federal courts that are evaluating tort claims in the absence of a federal statute or established federal rule defining the tort have often looked to the Restatement for guidance.[80]  Section 821D of the Restatement defines a private nuisance as "a nontrespassory invasion of another's interest in the private use and enjoyment of land."[81]  Alaska's private nuisance law is comparable.  Specifically, AS 09.45.230(a) authorizes a person to "bring a civil action to enjoin or abate a private nuisance," and AS 09.45.255 defines a nuisance as "a substantial and unreasonable interference with

---

[78] Section 1333(a)(2) of the OCSLA imports a state's substantive law as "surrogate" law when not inconsistent with Federal law.

[79] Greenpeace USA asserts the OCSLA requires "there must have been some violation of the code provision prior to initiating an action." 12(b)(6) Reply at 7 (emphasis in original).  This argument may be a reference to 43 U.S.C. § 1349(a), which applies to citizen suits that allege a violation of the OCSLA and its regulations—a topic not at issue in this litigation.  The applicable jurisdictional section of the OCSLA in this case is 43 U.S.C. § 1349(b), which accords jurisdiction to the district court over "cases and controversies arising out of, or in connection with" OCS development.  This court does not read that statutory provision to preclude the court's exercise of jurisdiction to accord injunctive relief for threatened torts when warranted.  *See also* discussion, *supra* at 11-12.

[80] *See, e.g., Conticarriers & Terminals, Inc. v. Delta Bulk Terminal*, 807 F.Supp. 1252, 1255 (M.D. La. 1992) ("In fashioning an appropriate maritime rule where none exists, federal courts also look to the Restatement of the Law."); *Lewis v. Timco, Inc.*, 716 F.2d 1425, 1428 (5th Cir. 1983) ("maritime law traditionally resists doctrinal change that might balkanize its uniformity and generality.").

[81] Restatement (Second) of Torts § 821D.  *See also id.* at § 822.

Case 3:12-cv-00042-SLG   Document 108   Filed 05/29/12   Page 22 of 43

the use or enjoyment of real property, including water." The Alaska Supreme Court has also cited to the Restatement when reviewing claims of private nuisance.[82]

Restatement Section 829A states that "an intentional invasion of another's interest in the use and enjoyment of land is unreasonable if the harm resulting from the invasion is severe and greater than the other should be required to bear without compensation."[83] And Section 830 states that an intentional invasion of another's land is "unreasonable if the harm is significant and it would be practicable for the actor to avoid the harm in whole or in part without undue hardship."[84]

Here, Greenpeace USA's alleged intentional interference with Shell's access to and use of its OCS lease sites is unreasonable under Section 829A, as it could result in a harm that is "severe and greater than [Shell] should be required to bear without compensation."[85] And applying Section 830, it is certainly practicable for Greenpeace USA to avoid sending its activists onto navigable waters to board, block, or blockade Shell vessels en route to or at the OCS lease sites.

This court concurs with Shell's assertion that its possessory interest in its OCS leases constitutes an interest in land as to which Shell has alleged a viable cause of action for a private nuisance under either general maritime law or Alaska law, through the OCSLA. But with respect to Greenpeace USA's alleged interference with Shell's

---

[82] *See Parks Hiway Enterprises, LLC v. CEM Leasing, Inc.*, 995 P.2d 657, 666 (Alaska 2000) (citing Restatement (Second) of Torts §§ 822A, 822B, 834).

[83] Restatement (Second) of Torts § 829A.

[84] *Id.* at § 830.

[85] *Id.* at § 829A.

use of its vessels, a cause of action for private nuisance cannot be maintained, as the vessels do not constitute real property.

In light of the foregoing, Greenpeace USA's motion to dismiss is granted with respect to Shell's public nuisance claim and its private nuisance claim with respect to its vessels. Shell has adequately pled that Greenpeace USA's alleged interference with Shell's access to and use of its interests in its OCS leases constitute a private nuisance under general maritime law and the OCSLA, including by extension Alaska law. Accordingly, Greenpeace USA's motion to dismiss this component of this cause of action is denied.

### B. Tortious Interference with Contractual Relations

Shell's second cause of action in its Second Amended Complaint asserts that Greenpeace USA has interfered with Shell's contracts for the transport to and use of the *Noble Discoverer*, the *Nordica* and the *Fennica*, and other vessels in the Arctic Ocean.[86] And Shell maintains that Greenpeace USA "has improperly interfered with . . . Shell's ability to comply with the conditions of its oil and gas leases and other contracts, pertaining to [the] Chukchi Sea and the Beaufort Sea oil and gas exploration on Shell's United States OCS leases."[87] Shell also alleges that Greenpeace USA is intentionally and knowingly threatening to continue to interfere with Shell's contracts relating to the exploration of its OCS leases.[88]

---

[86] Second Am. Compl. ¶ 43.

[87] *Id.* at ¶ 44.

[88] *Id.* at ¶¶ 43-44

Case 3:12-cv-00042-SLG   Document 108   Filed 05/29/12   Page 24 of 43

As it did with respect to Shell's private nuisance claim, Greenpeace USA asserts that federal maritime law does not apply to Shell's OCS drilling contracts because those contracts are not maritime contracts.[89]  But this court finds that federal maritime law would apply with respect to Shell's contracts to use third-party vessels during its intended drilling activities, even if the OCSLA were to apply with respect to Shell's leasehold contracts on the OCS.

Applying general maritime law, this court turns to the Restatement for guidance.[90]  The Restatement provides that

> [o]ne who intentionally and improperly interferes with the performance of a contract … between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.[91]

The parties agree[92] that a plaintiff seeking to establish a claim of tortious interference with a contract under Alaska law must show: "(1) an existing contract between it and a third party; (2) defendant's knowledge of the contract and intent to induce a breach; (3) breach; (4) wrongful conduct of the defendant causing the breach; (5) damages; and (6) absence of privilege or jurisdiction for the defendant's conduct."[93]

---

[89] 12(b)(6) Reply at 9.

[90] *See, e.g., Int'l Marine and Indus. Applicators, Inc. v. Avondale Indus., Inc.,* 1994 WL 71287 (E.D. La. Feb. 28, 1994) (applying Restatement to claim of tortious interference rather than state law for uniformity).

[91] Restatement (Second) of Torts § 766.

[92] 12(b)(6) Opp. at 17; 12(b)(6) Reply at 9.

[93] *K. & K. Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 716 (Alaska 2003).

As the Restatement's definition of the tort is by and large subsumed within Alaska's definition, a single analysis of this tort under Alaska law for purposes of this motion is appropriate.

Shell's allegations of Greenpeace USA's tortious interference with Shell's contractual relations with third parties contain very little factual information in support of this claim. Shell has not alleged any of the specifics of its contractual obligations with third parties, and has not explained how those contractual obligations have been impaired by Greenpeace USA's past alleged conduct against Shell. Nor has Shell explained how future alleged tortious conduct by Greenpeace USA, such as blocking or blockading Shell's contracted vessels, including its drilling rigs, would interfere with Shell's contractual relationships. In short, Shell's pleading of tortious interference with contracts can be characterized as "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which the United States Supreme Court has held "do not suffice" in the face of a motion to dismiss.[94] Shell correctly maintains that "[n]otice pleading does not require the incantation of magic words."[95] And when reviewing a motion to dismiss, a court can draw "reasonable inferences" from the factual content before it.[96] But this court finds that Shell's claims of both past and threatened future tortious interference with its contractual relations have been inadequately pled such that dismissal of this claim on the record before this court at this time is warranted.

---

[94] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[95] 12(b)(6) Opp. at 19.

[96] *See Iqbal*, 556 U.S. at 678.

### C. Trespass and Trespass to Chattels

Shell's third cause of action alleges that Greenpeace USA "has boarded and occupied the *Noble Discoverer*, the *Nordica*, the *Fennica*, and the *Harvey Explorer*."[97] It also alleges that Greenpeace USA

> threatens to commit further trespasses to stop, delay, or interfere with Shell's exploration activities in the Arctic Ocean on its United States OCS leases, by boarding vessels or facilities, chaining or securing persons to anchors, vessels, or facilities, or by otherwise physically occupying, contacting, damaging, or impeding Shell's possession, use, and operation of vessels and facilities[.][98]

Shell asserts that "[t]hese activities by Greenpeace are ultra hazardous, and constitute trespass or trespass to chattels."[99]

The parties agree that Shell's cause of action for trespass and trespass to chattels should be evaluated under the Restatement standard under both federal maritime law and Alaska law.[100] This approach is consistent with the opinions of the Fifth Circuit, which has held "that general common law and in particular the Restatement (Second) of Torts should control to determine the law of maritime trespass, in order to promote uniformity in general maritime law."[101] As Alaska, too, has

---

[97] Second Am. Compl. at ¶ 49.

[98] *Id.* at ¶ 49.

[99] *Id.* at ¶ 50.

[100] 12(b)(6) Mem. at 17; 12(b)(6) Opp. at 20; 12(b)(6) Reply at 10, 18.

[101] *Marastro Compania Naviera, S.A. v. Canadian Mar. Carriers, Ltd.*, 959 F.2d 49, 53 (5th Cir. 1992). *See also* Prelim. Inj. Order at 9.

adopted the Restatement definition of trespass,[102] this court will apply the Restatement definitions to Shell's trespass and trespass to chattels claims.

### 1) Trespass to Chattels

The Restatement defines trespass to chattels as intentionally "dispossessing another of the chattel" or intentionally "using or intermeddling with a chattel in another's possession."[103]  But the Restatement adds that one who commits a trespass to chattels is liable to the possessor of the chattel only if the trespasser (1) dispossesses the possessor of the chattel; (2) impairs the condition, quality, or value of the chattel; (3) deprives the possessor of the use of the chattel for a substantial period of time; or (4) causes bodily harm to the possessor, or harm to "some person or thing in which the possessor has a legally protected interest."[104]

The Restatement Comment on deprivation of use, the basis of liability most relevant here, states that the deprivation of use necessary to establish liability cannot be "mere[ly] momentary or theoretical"; it "must be for a time so substantial that it is possible to estimate the loss caused thereby."[105]  An accompanying illustration states that the requisite substantial time would be met when a trespasser had deprived a

---

[102] *See St. Paul Church, Inc. v. Bd. of Trustees of Alaska Missionary Conf. of United Methodist Church, Inc.*, 145 P.3d 541, 558 (Alaska 2006) (citing to the Restatement and prior Alaska Supreme Court decisions relying on the Restatement).  And, to the extent jurisdiction rests under the OCSLA, Alaska law would apply to this analysis pursuant to 43 U.S.C. § 1333(a).

[103] Restatement (Second) of Torts § 217.  *See also Prentzel v. State, Dept. of Public Safety*, 169 P.3d 573, 583 and n.19 (Alaska 2007) (citing Restatement (Second) of Torts § 217).

[104] Restatement (Second) of Torts § 218.

[105] *Id.* at § 218 (Comment on Clause (c)).

possessor of the use of his or her car for one hour.[106]

Much of Greenpeace USA's argument is focused on its assertion that it had no involvement in the Finnish or New Zealand incidents. But for purposes of this motion to dismiss, the factual allegations of Shell's Second Amended Complaint are accepted as true, and adequately allege that Greenpeace USA was acting in concert with other Greenpeace organizations with respect to those incidents.[107] More to the point, Shell has adequately pled that Greenpeace USA intends to commit future trespasses to Shell's chattels, and specifically its owned and contracted vessels, so as to state a cause of action for this threatened future tort.[108] Accordingly, Greenpeace USA's motion to dismiss this cause of action is denied.

### 2) Trespass to Land

Shell's Second Amended Complaint also asserts a claim for trespass to land. It asserts that Greenpeace USA's threatened actions of "chaining or securing persons to . . . facilities, or by otherwise physically occupying, contacting, damaging, or impeding Shell's possession, use, and operation of . . . facilities whether located at docks in Seattle, Washington, Dutch Harbor, Alaska or elsewhere" would constitute a trespass upon these real property interests.[109] Its complaint specifically identifies its planned aircraft operations originating from Barrow and Deadhorse, Alaska.[110]

---

[106] *Id.* at § 218 (Comment on Clause (c), illustration 4).

[107] *See* Second Am. Compl. at ¶¶ 48-51.

[108] *See, e.g.*, *id.* at ¶¶ 28, 48-52.

[109] *Id.* at ¶ 49.

[110] *Id.* at ¶ 18.

The Restatement creates liability for trespass to land where an individual "intentionally . . . enters land in the possession of the other, or causes a thing or a third person to do so," regardless "of whether he thereby causes harm to any legally protected interest of the other[.]"[111]

Greenpeace USA argues that neither Shell's complaint nor its response to the Rule 12(b)(6) motion to dismiss "address the trespassory actions it speculates that Greenpeace USA would take on its Barrow and prospective Deadhorse facilities[.]"[112] Greenpeace USA does not dispute that an entry onto Shell's leased real property in Barrow and Deadhorse would constitute a trespass to land under the Restatement, but it argues that Shell's request for injunctive relief to preclude a threatened trespass to these aircraft facilities is "overbroad and unsupported[.]"[113] Citing *Iqbal*, Greenpeace USA asserts that Shell's claims regarding its Barrow and Deadhorse aviation facilities do not have a sufficient factual basis to state a claim under Rule 12(b)(6).[114] But this court finds that Shell's Second Amended Complaint sets forth adequate factual allegations so as to state a cause of action for a threatened trespass with respect to these aviation facilities.[115] Accordingly, Greenpeace USA's motion to dismiss for failure to state a claim of a threatened trespass at these aviation facilities is denied.

---

[111] Restatement (Second) of Torts § 158.

[112] 12(b)(6) Reply at 17.

[113] 12(b)(6) Reply at 17.

[114] *Id.* at 16-17.

[115] *See, e.g.,* Second Am. Compl. at ¶¶ 18, 19, 20, 21, 23.

Shell also asserts that it has a real property interest in its OCS leases, and that impeding Shell's access to those leases, including by occupying the airspace above the lease, would constitute a trespass to land.[116]  Greenpeace USA maintains that an incursion into the air space about the seabed parcels constituting Shell's OCS leases would not be an actionable trespass to land.[117]  In this regard, Section 159 of the Restatement is instructive, as it provides that "a trespass may be committed on, beneath, or above the surface of the earth."  Specifically with regard to aircraft, Section 159 provides that an entry into "space above the land of another is a trespass if, but only if, (a) it enters into the immediate reaches of the air space next to the land, and (b) it interferes substantially with the other's use and enjoyment of his land."[118]  With respect to what constitutes "immediate reaches," Comment I to this section indicates that "flight at 500 feet or more above the surface is not within the 'immediate reaches,' while flight within 50 feet, which interferes with actual use, clearly is, and flight within 150 feet, which also so interferes, may present a question of fact."[119]  And Comment m to Section 159 notes that "[e]ven though a flight may not be within the 'immediate reaches' [so as to constitute a trespass], it may still unreasonably interfere with the use and enjoyment of the land.  In such a case the liability will rest upon the basis of nuisance rather than trespass."[120]

---

[116] 12(b)(6) Opp. at 21-22.

[117] 12(b)(6) Reply at 18.

[118] Restatement (Second) of Torts § 159.

[119] *Id.* at § 159 Comment l.

[120] *Id.* at § 159 Comment m.

Greenpeace USA cites to Section 193 of the Restatement, which states that "[a] person is privileged to navigate in a reasonable manner navigable waters situated on land in the possession of another."[121]  However, Comment d of that section identifies this privilege of navigation as a privilege which, "like the privilege to use a public highway, must be exercised for the purpose of legitimate navigation and in a reasonable manner."[122]  Thus, under the Restatement, if Greenpeace USA's presence in the immediate reaches of the air or in the water above Shell's OCS leases is not a reasonable, legitimate use of the air or water for the purposes of navigation, it could constitute an actionable trespass to land.

For the foregoing reasons, Greenpeace USA's motion to dismiss Shell's cause of action alleging a threatened trespass to land is denied.

### D. Conversion

Shell's fourth cause of action alleges that Greenpeace USA's actual and threatened conduct, "including its illegal boarding and occupation of the *Noble Discoverer*, the *Nordica*, the *Fennica*, and the *Harvey Explorer*, and its threatened boarding and occupation of the *Kulluk* and other vessels," constitutes "unauthorized use and control, and tortious conversion, of Shell's personal property."[123]

Alaska law defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the

---

[121] *Id.* at § 193.

[122] *Id.* at § 193 Comment d.

[123] Second Am. Compl. ¶¶ 53-57 (Fourth Cause of Action).

Case 3:12-cv-00042-SLG   Document 108   Filed 05/29/12   Page 32 of 43

actor may justly be required to pay the other the full value of the chattel."[124]  This definition is identical to that set forth in Section 222A of the Restatement, to which federal courts often turn when evaluating maritime torts.[125]  The Restatement's illustrations in Section 222A make clear that while the seriousness of the interference that must be exercised over a chattel for it to constitute conversion is significantly higher than that required for trespass to chattels, the line to be drawn between the two torts is far from clear.[126]

Based on the record before this court, Shell's Second Amended Complaint fails to state a cause of action for conversion with respect to the Greenpeace incidents that have already taken place involving the *Noble Discoverer*, the *Harvey Explorer*, the *Nordica*, and the *Fennica*.  While Greenpeace USA is alleged to have occupied and boarded each of these vessels, Shell has not alleged facts that demonstrate that Shell's right to control these vessels was so compromised that the tortfeasors may justly be required to pay Shell the full value of these vessels.  Thus, Shell's action for conversion is dismissed insofar as it has alleged this tort with respect to these prior actions.

With regard to Greenpeace USA's threatened future actions, Shell's allegations of conversion are substantially the same as those it makes in support of its claim for trespass to chattels.  Shell has alleged that Greenpeace USA intends to board and occupy its vessels, and that if Greenpeace were "allowed in proximity to Shell's vessels

---

[124] *Silvers v. Silvers*, 999 P.2d 786, 793 (Alaska 2000) (citing *Alaska Cont'l, Inc. v. Trickey,* 933 P.2d 528, 536 (Alaska 1997).  *See also* Restatement (Second) of Torts § 222A.

[125] *See* Restatement (Second) of Torts § 222A.

[126] *Id.* at § 222A Illustrations.

or operations, their presence would create a dilemma by forcing Shell to choose between abandoning lawful operations as long as Greenpeace is present, and thereby incurring irreparable harm, or proceeding at grave risk to life, limb, property, and the environment."[127]  Given the uncertainty of the consequences of a successful future tortious direct action by Greenpeace USA against Shell, this court finds that the threatened tort of conversion has been adequately pled and the motion to dismiss this count is denied.

### E.  Interference with Maritime Navigation

Shell's fifth and final cause of action in its Second Amended Complaint alleges that Greenpeace USA's threatened efforts "to blockade or block the path of [Shell's] vessels while in navigable waters are in flagrant disregard of the COLREGS, and otherwise constitute unlawful obstruction or interference with maritime navigation."[128] Shell cites specifically to Rule 18 of the COLREGS, which provides that a vessel "shall keep out of the way of a vessel restricted in her ability to maneuver," which presumably would include a mobile drilling vessel.[129]  The asserted basis for jurisdiction for this claim is general maritime law.[130]

Under maritime tort law, "[l]iability for collisions, allisions, and other types of marine casualties is based upon a finding of fault that caused or contributed to the

---

[127] Second Am. Compl. ¶ 28.

[128] *Id.* at ¶ 62.

[129] *Id.* at ¶ 60; COLREGS (authorized at 33 U.S.C. § 1601-1608), *available at* http://www.navcen.uscg.gov/?pageName=navRuleChanges.

[130] *See also* discussion of 33 U.S.C. § 1601, *supra* at 9.

damage incurred. From earliest times, this rule has been consistently applied." [131] This court finds that an intentional interference with the right of another to freely navigate may constitute a tort under general maritime law and that this tort has been adequately pled by Shell. Accordingly, Greenpeace USA's motion to dismiss this cause of action is denied.[132]

## III.  Shell's Motion for Additional Preliminary Injunctive Relief, or Alternatively, for an Indicative Ruling

This court's March 28, 2012 Preliminary Injunction Order was applicable only to United States territorial waters and ports.[133] The balance of Shell's motion for injunctive relief was deferred until the parties completed their briefing on Greenpeace USA's two motions to dismiss. That briefing was completed on April 9, 2012. In late April, Greenpeace USA filed an interlocutory appeal to the Ninth Circuit of the March 28, 2012 Preliminary Injunction Order.[134] However, Greenpeace USA has not sought a stay of the Preliminary Injunction Order. On May 14, 2012, Shell filed a motion seeking a ruling

---

[131] *Schoenbaum* § 14-2. *See also Evergreen Int'l v. Marinex Construction Co.*, 477 F.Supp.2d 681, 685-86 (quoting *Schoenbaum*) (citing *Folkstone Maritime, Ltd. v. CSX Corp.*, 64 F.3d 1037, 1046 (7th Cir. 1995)).

[132] In this regard, this court disagrees with Greenpeace USA's interpretation of the District Court's analysis of this issue in *Institute of Cetacean Research v. Sea Shepherd Conservation Soc.*, 2012 WL 958545 (W.D. Wash. Mar. 19, 2012). *See* 12(b)(6) Reply at 23-24. The District Court held that "the COLREGS state specific, obligatory, and universal norms of maritime navigation," and held that a violation of a COLREG rule could form the basis of an underlying claim for interference with safe navigation. And the District Court expressly held that the Japanese whalers "are likely to succeed on one narrow aspect of the claims underlying the injunction they request: that Sea Shepherd violates the COLREGS by piloting its ships and boats too close to its ships." But the court then concluded that "international comity dictates that it not grant relief[.]" *Inst. of Cetacean Research*, 2012 WL 958545 at *21.

[133] Mot. for Additional Relief (Docket 100).

[134] *Shell v. Greenpeace, Inc.,* Appeal No. 12-35332 (filed Apr. 26, 2012).

on those portions of its motion for injunctive relief that this court had not addressed. Specifically, Shell seeks to expand the terms of the Preliminary Injunction Order so as to include its proposed aviation facilities in Barrow and its operations outside of the twelve-mile territorial sea and within the United States EEZ, which is where it plans to conduct both of its drilling operations this summer.

The parties dispute the extent to which this court retains jurisdiction to expand the scope of the Preliminary Injunction while the interlocutory appeal is pending. Shell asserts that this court retains jurisdiction to expand the Preliminary Injunction Order so as to include its planned EEZ operations and its leased aviation facilities. Alternatively, if this court determines that it lacks jurisdiction to accord the additional injunctive relief Shell seeks at this time, Shell seeks an "indicative ruling" pursuant to Federal Rule of Civil Procedure 62.1 on the undecided portions of the motion for injunctive relief. If this court indicates that it would grant the additional relief, Shell indicates that it would then seek a remand for that purpose from the Ninth Circuit pursuant to Civil Rule 62.1 so as to have the additional relief accorded to it.

In its response to Shell's most recent motion, Greenpeace USA has indicated its non-opposition to this court's determination of the pending Rule 12 motions, which have now been determined in this decision. And Greenpeace USA indicates it is not opposed to this court issuing an indicative ruling concerning the additional injunctive relief sought by Shell pursuant to Rule 62.1. But Greenpeace USA asserts that the District Court is without jurisdiction to expand the scope of the Preliminary Injunction Order during the pendency of its interlocutory appeal. It acknowledges that Rule 62(c) permits a trial court to "suspend, modify, restore or grant an injunction" while an appeal is pending

from an interlocutory order, but it maintains that Ninth Circuit case law establishes that this rule has been interpreted to be "merely expressive of a power inherent in the court to preserve the status quo where, in its sound discretion, the court deems the circumstances to so justify."[135]

Greenpeace USA also interprets paragraph 4(c) of Shell's proposed amended order to extend the scope of the preliminary injunction to areas outside the United States EEZ and "impermissibly expand the injunction to permit this Court to exercise authority over foreign organizations and associated activists not parties to this proceeding."[136]  However, in its Reply, Shell points to paragraph 1(a) of its proposed amended order, and clarifies that it had intended and requested that the Preliminary Injunction Order be expanded only to include its planned operations within the United States EEZ and its North Slope aviation facilities.[137]

Civil Rule 62(c) provides as follows:

> While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights. . .

In *Natural Resources Defense Council, Inc. v. Southwest Marine Inc.*, the Ninth Circuit held

---

[135] Greenpeace USA's Corrected Partial Opp. to Mot. for Additional Relief at 4, n.6 (Docket 106-1) [hereinafter Corrected Additional Relief Opp.] (citing *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982)).

[136] *Id.* at 8-9.

[137] *See* Shell's Reply to Opp. to Mot. for Additional Relief at 6, n.16 (Docket 107) [hereinafter Additional Relief Reply].

Once a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed. . . This rule is judge-made; its purpose is to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously. . . The principle of exclusive appellate jurisdiction is not, however, absolute. . . The district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo.[138]

Citing specifically to Civil Rule 62(c), the Ninth Circuit added

This Rule grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal; it "does not restore jurisdiction to the district court to adjudicate anew the merits of the case." . . . Thus, any action taken pursuant to Rule 62(c) "may not materially alter the status of the case on appeal."[139]

In *Southwest Marine*, the Ninth Circuit concluded that the trial court's modifications of an injunction while an appeal was pending were within the district court's discretion, as the trial court's modifications "left unchanged the core questions before the appellate panel deciding the consolidated appeal."[140]  The court added, "if compliance with the

---

[138] *Natural Res. Def. Council, Inc. v. S.W. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam); *McClatchy Newspapers*, 686 F.2d at 734; *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983); 20 James Wm. Moore, *Moore's Federal Practice*, §§ 303.32[1], 303.32[2][b] (3d ed. 2000); *Newton v. Consol. Gas Co.*, 258 U.S. 165, 177 (1922); *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976); *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 79 (9th Cir. 1951)).

[139] *Id.* (citing *McClatchy Newspapers*, 686 F.2d at 734; Allan Ides, *The Authority of a Federal District Court to Proceed After a Notice of Appeal Has Been Filed*, 143 F.R.D. 307, 322 (1992)). *See also Mayweathers v. Newland*, 258 F.3d 930 (9th Cir. 2001) (upholding District Court's authority to enter second preliminary injunction on terms identical to first injunction, when interlocutory appeal of first injunction was pending and the first injunction was set to automatically expire by its terms).

[140] *Id.* at 1167.

injunction threatens to deprive a party of the benefit of a successful appeal, it is up to that party to obtain a stay of the judgment."[141]

The parties here generally agree that this court has the ability to modify an injunction if necessary to preserve the status quo pending appeal. They disagree, however, in their definitions of what constitutes the current status quo. Shell defines the status quo as "the state of the world before Greenpeace began its campaign to illegally and tortiously interfere with Shell's rights to lawfully explore for oil and gas in the Beaufort and Chukchi Seas."[142] From there, Shell asserts that expanding the scope of the injunction to include its aviation facilities and planned operations in the EEZ would not alter that status quo, as "the status quo Shell seeks to preserve is the state of the world where its lawful rights to explore for oil and gas in the Alaskan OCS are protected from the unacceptable risks to life, property and the environment caused by Greenpeace's 'direct actions.'"[143] Shell also asserts that expanding the scope of the Preliminary Injunction to include the EEZ and aviation facilities will not materially alter the status of the case or the core issues that are on appeal before the Ninth Circuit, as the analysis that this court applied to enter the Preliminary Injunction Order would be unaltered and the basic terms of the injunction would be unchanged except that they would apply with equal force to these additional areas.[144]

---

[141] *Id.* at 1168.

[142] Additional Relief Reply at 5.

[143] *Id.* at 5.

[144] *Id.* at 6.

Case 3:12-cv-00042-SLG   Document 108   Filed 05/29/12   Page 39 of 43

Greenpeace USA asserts that the status quo is an injunction that is limited solely to United States territorial waters and ports, and that expanding the scope of the injunction would not preserve this status quo. But Greenpeace USA seems principally concerned with its reading of the proposed amended injunction to extend beyond the EEZ, to "an extraterritorial application of this Court's injunctive power,"[145] "over foreign organizations and associated activists not parties to this proceeding,"[146] relief which Shell's Reply indicates that it is not seeking, and which this court does not intend to grant.[147]

If the maintenance of the status quo is interpreted in its narrowest sense, then it is difficult to imagine a preliminary injunction ever being modified pending an interlocutory appeal. *Black's Law Dictionary* defines the status quo as "the situation that currently exists."[148] The situation that currently exists is one that precludes Greenpeace USA from tortiously interfering with Shell's planned OCS operations. When the Preliminary Injunction Order was entered on March 28, 2012, the United States components of those operations were taking place within United States territorial waters and ports. Shell's operation in the EEZ and at its aviation facilities are not scheduled to begin for several more weeks. Thus, when this court entered the March 28 Preliminary Injunction Order, there was no immediate need to address Shell's planned activities in the EEZ and at the aviation facilities. But if this court did not extend the scope of the

---

[145] Corrected Additional Relief Opp. at 5.

[146] *Id.* at 9.

[147] *See* discussion, *supra* at 37.

[148] *Black's Law Dictionary* 1542 (Bryan A. Garner, ed.) (9th ed.).

injunctive relief at this time to include those additional planned areas of operations, such inaction by this court could be wrongly interpreted as an implicit authorization for Greenpeace USA to commit illegal or tortious acts against Shell in the EEZ and at Shell's aviation facilities. In these circumstances, this court finds that modification of the injunction to include Shell's planned operations in the EEZ and the Barrow aviation facilities may be warranted, as it would not materially alter the status quo of the case on appeal to the Ninth Circuit.[149] Accordingly, this court will consider the merits of Shell's motion for additional preliminary injunctive relief.

## IV.    Shell's Motion for Preliminary Injunction

Shell's request for preliminary injunctive relief for its planned operations in the EEZ and at its aviation facilities was fully briefed by the parties earlier this year. The March 28, 2012 Order Granting Motion for Preliminary Injunction contains a detailed analysis of the four-factor test that a party seeking preliminary injunctive relief must establish.[150] That order was limited to United States territorial waters and ports only because Greenpeace USA's motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim had not yet been fully determined by this court.[151] But

---

[149] It follows, too, that if the Ninth Circuit reverses this court's March 28, 2012 Preliminary Injunction Order, then the Amended Preliminary Injunction Order would likewise be subject to that same appellate determination.

[150] Prelim. Inj. Order at 11-24.

[151] As set forth above, Greenpeace USA's motion to dismiss under Rule 12(b)(6) has been granted in part, and Shell's claims of public nuisance, tortious interference with contractual relations, and past acts of conversion have all been dismissed. But, as was the case when this court entered the Preliminary Injunction Order, Shell's claims of private nuisance, trespass and trespass to chattels, threatened future conversion, and interference with maritime navigation all remain viable and form the underpinning of Shell's continued entitlement to preliminary injunctive relief.

Case 3:12-cv-00042-SLG   Document 108   Filed 05/29/12   Page 41 of 43

the analysis that this court applied when considering preliminary injunctive relief solely within United States territorial waters and ports is identical for the threatened Greenpeace USA conduct against Shell in the EEZ or at its Arctic land-based aviation facilities. Indeed, with respect to potential tortious interference, Shell's case for preliminary injunctive relief applies with greatest force at the planned drilling sites themselves, each of which are within the EEZ and outside the territorial sea. In short, this court finds—for all the same reasons that this court previously found—that Shell has demonstrated the requisite likelihood of success on the merits, likelihood of irreparable harm in the absence of preliminary relief, the balancing of the equities remains tipped strongly in its favor, and the public interest will be served by the inclusion of the EEZ and aviation facilities within the terms of preliminary injunctive relief.[152] Further, this court has strived to narrowly tailor the scope of preliminary injunctive relief, and has specifically left open the opportunity for Greenpeace USA to seek by motion to enter within the safety zones on such terms that this court may order, so as to accord to the organization the opportunity to more closely monitor Shell's planned drilling activities.[153]

Apart from expanding the scope of injunctive relief to include Shell's operations in the EEZ and the aviation facilities, and correcting the name of one of the vessels, this court is not otherwise modifying the terms of the Preliminary Injunction Order that is currently on appeal to the Ninth Circuit. A separate Amended Preliminary Injunction

---

[152] In this regard, this court adopts and incorporates by reference the analysis set forth in this court's March 28, 2012 Order Granting Motion for Preliminary Injunction as if fully set forth herein.

[153] See Prelim. Inj. Order at 23-24, 29.

Case 3:12-cv-00042-SLG   Document 108   Filed 05/29/12   Page 42 of 43

Order that sets forth the terms of the order and states with specificity the acts that are restrained is entered on this same date.

### *Conclusion*

For the reasons expressed herein, Greenpeace USA's Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction is DENIED; Greenpeace USA's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim is GRANTED IN PART and DENIED IN PART. Specifically, Shell's claims of public nuisance, tortious interference with contractual relations, and past acts of conversion are each dismissed for failure to state a claim. Greenpeace USA's motion to dismiss Shell's remaining claims of private nuisance, trespass and trespass to chattels, threatened future conversion, and interference with maritime navigation is denied; each of these claims remains viable. Shell's Motion for Additional Preliminary Injunctive Relief is GRANTED, and a separate Amended Preliminary Injunction Order is issued on this date.

DATED at Anchorage, Alaska, this 29th day of May, 2012.

/s/ Sharon L. Gleason
United States District Judge